## MELHOP & KINGMAN v. DOANE & Co.

1. Former adjudication: JUDGMENT IN REM: FOREIGN ATTACHMENT. An unsatisfied judgment, rendered in another State, in a proceeding *in rem*, against a defendant who was at the time resident of this State, and who was not personally served and made no appearance, has no binding force on the defendant as a judgment *in personam*, and no action can be maintained in our courts to recover the amount thereof.

2. —— Nor has such judgment any force in this State as a former adjudication of the cause of action on which it professes to be founded.

3. —— But where property of a defendant residing in this State, who was not personally served and who made no appearance, is sold under a proceeding of foreign attachment in another State, he is thereby concluded from recovering the value thereof by an action in the courts of this State against the plaintiff. This holding is based on the same principle as that which regards the proceeding *in rem*, binding and conclusive as to the title of the property seized and sold in satisfaction of the judgment rendered therein. MILLER, J., dissenting.

*Appeal from Dubuque District Court.*

TUESDAY, APRIL 25.

THE original petition claimed $500 for a wrongful conversion by defendant of eight chests of tea and three boxes of spice.

The defendants in their answer justified the taking of the property by pleading that the plaintiffs being indebted to them, they (the defendants) brought suit and sued out a

foreign attachment against the plaintiffs herein, before a justice of the peace of Cook county, Ill.; that a portion of the property in controversy was attached and sold to satisfy said indebtedness and the judgment obtained thereon, in the attachment proceeding, of which the plaintiffs were notified by publication, and that the balance of said property is in defendants' warehouse in Chicago, awaiting the order of the plaintiffs.    To this answer a full transcript of the attachment proceedings is annexed as an exhibit.

The plaintiffs thereupon, by leave of the court, filed an amended petition, stating "that the defendants wrongfully brought a suit in attachment in the city of Chicago, Illinois, before J. H. Hoisington, a justice of the peace, against your petitioners, and wrongfully caused a writ of attachment to be issued from the office of the said justice of the peace against the goods and chattels of your petitioners, and caused the said writ to be levied upon eight chests of tea, and upon three boxes of spice, which were the property of your petitioners, and were of the value of $500 ; and caused four of said chests of tea and one box of spice to be sold, and caused the remainder of said tea and spice to be placed in the warehouse of the defendants. And your petitioners state that the claim upon which said suit was brought was wholly false and without foundation, all of which was well known to the defendants ; that no personal service was made upon your petitioners, and that they had no knowledge of said suit until long after the same was terminated and said property sold.    And your petitioners state that, by reason of the wrongful suing out of said writ of attachment, and levy of the same, they have sustained damages in the sum of $500," etc.    They also allege that "the goods described in the amended petition are the same goods described in the original petition, and that the wrongful levy herein complained of is the same wrongful taking complained of in the original petition."

The defendants demurred to this amended petition, which being overruled they answered the amended petition by re-affirming their former answer, and also by a general denial of the matters stated in the amended petition.

A jury trial was had. Verdict for plaintiffs for $490. Motion for a new trial overruled; judgment on the verdict, and defendants appeal.

*Griffith & Knight* for the appellants.

*Adams & Robinson* for the appellees.

MILLER, J. — I. The appellants first assign as error the overruling of their demurrer to the plaintiffs' amended petition. Having answered the pleading demurred to they waived this objection, and hence the correctness of this ruling cannot be examined by this court. *Eubank* v. *Whittaker*, 11 Iowa, 197; *Smith* v. *Taylor*, id. 214; *Mahaska County* v. *Ingalls*, 14 id. 170; *State* v. *Klingman*, id. 404; *Franklin* v. *Twogood*, 18 id. 515.

II. The second, fourth, fifth, sixth, seventh and eighth errors assigned will be considered together. They involve the question of the effect of the foreign attachment proceedings in the State of Illinois, wherein the appellants were plaintiffs and appellees were defendants.

It is conceded that the proceedings were regular, that personal property of appellees was duly attached, condemned and sold under proper process issued in the case. It is also conceded that the appellees — defendants in the attachment proceedings — were at the time citizens and residents of this State; that they were not served with notice of the attachment suit, and had no knowledge of the same until long after judgment therein was rendered.

The rule is well settled and well understood, that in personal actions, if the court has jurisdiction of the subject-

matter and of the parties, by the service of notice of its pendency, its judgment is binding and conclusive, while it remains unreversed, however erroneous.

It is indispensable to the binding effect of a judgment that the court had jurisdiction of the subject-matter and of the parties. If the jurisdiction fail as to either, the judgment is a mere nullity. The whole doctrine of the binding force and conclusiveness of judgments rests upon the foundation of jurisdiction. ·Story on Conflict of Laws, §§ 584, 585, 586 ; *Rose* v. *Kimley,* 4 Cranch, 269 ; *Juda* v. *Stephenson,* 10 Iowa, 493 ; *Buckmaster* v. *Carlin,* 3 Scam. (Ill.) 104 ; *Mason* v. *Messenger & May,* 17 Iowa, 261 ; *Edmunds* v. *Montgomery & Shaw,* 1 id. 143 ; *Olds* v. *Glaze,* 7 id. 86 ; *Latterette* v. *Cook,* 1 id. 1 ; *Johnson & Stephens* v. *Butler,* 2 id. 535 ; *Lampson* v. *Platt,* 1 id. 556 ; *Ham* v. *Steamboat Hamburg,* 2 id. 460 ; *Darrance* v. *Preston,* 18 id. 396; *Johnson* v. *Dodge,* 19 id. 106 ; *The State of Indiana ex rel. Stone* v. *Helmer,* 21 id. 370 ; *Osborn* v. *Cloud,* 23 id. 104 ; *McCormick* v. *Grundy County,* 24 id. 382 ; *Harshey* v. *Blackmarr,* 20 id. 162 ; *Abell* v. *Cross,* 17 id. 171 ; *Newcomb* v. *Dewey,* 27 id. 381 ; *Gilliland* v. *Sellers,* 2 Ohio St. 223 ; *Warren Manufacturing Co.* v. *Etna Insurance Co.,* 2 Paine's C. C. 501 ; *Shelton* v. *Tiffin,* 6 How. (U. S.) 143 ; *Wall* v. *Wall,* 28 Miss. (6 Cush.) 409 ; *Gray* v. *Hawes,* 8 Cal. 562 ; *Westervelt* v. *Lewis,* 2 McLean, 511.

It is equally well settled that a judgment of another State, where the jurisdiction properly appears upon the record, is entitled to the same faith and credit in this State as it is entitled to in the State where rendered. *Mills* v. *Duryee,* 7 Cranch, 481 ; *McElmoyle* v. *Cohen,* 14 Peters, 312, and notes to 2 American Lead. Cas. 719 ; *Warren Manufacturing Co.* v. *Etna Insurance Co.,* 2 Paine's C. C. 501 ; *Rathbone* v. *Ferry et al.,* 1 R. I. 73 ; *Jacquette* v. *Hugunon,* 2 McLean's C. C. 129 ; *Lincoln* v. *Tower,* id. 473 ; *Westervelt* v. *Lewis,* id. 511 ; *Hindman* v. *Mackall,* 3 G. Greene, 170 ; *Taylor, Shipton & Co.* v. *Runyon &*

Melhop & Kingman v. Doane & Co.

*Brown,* 3 Iowa, 474; *Greason* v. *Davis,* 9 id. 219; *Clemmer & Dunn* v. *Cooper,* 24 id. 185.

There are two general aspects in which foreign judgments (or judgments of other States) are to be regarded: First, judgments *in personam;* second, judgments *in rem.* We have seen that, in order to the validity of a judgment *in personam,* the court rendering the judgment must have had jurisdiction of the subject-matter *and of the person of the defendant.* So, in judgments *in rem,* where the subject-matter is personal property within the jurisdiction of the court pronouncing the judgment, the adjudication is binding and conclusive as to the right and title to the property seized and sold under the orders and process of the court. Whatever disposition the court makes of the property by sale or transfer will be held valid in every other country where the same question — the question of title thereto — comes either directly or indirectly in question before a foreign tribunal. *Croudson* v. *Leonard,* 4 Cranch, 433; *Williams* v. *Armroyd,* 7 id. 423; *Rose* v. *Kimly, supra; Grant* v. *McLaughlin,* 4 Johns. 34; 2 Kent's Com. 120; 1 Greenlf. Ev., §§ 540, 541, and notes.

In admiralty cases, which are proceedings *in rem,* there is some conflict in the cases as to the extent of their binding operation. In England, the sentences in admiralty cases are held conclusive, not only *in rem,* but also as to all points and facts which they professedly or incidentally decide. In some of the States of America, the same doctrine prevails, while in others, the sentences or judgments are held conclusive only *in rem,* and may be controverted as to all incidental grounds and facts upon which they profess to be founded. Chancellor KENT says: "The weight of judicial authority appears, however, to be decidedly in favor of the binding force and universal application of the doctrine of the English law. Story on Conflict of Laws, § 593; 2 Kent's Com. 121; 1 Greenlf. Ev., § 543; *Vandenheuvel* v. *U. Ins. Co.,* 2 Caines' Cas. 217; 2. Johns. Cas. 451.

In actions by creditors, by the process of attachment against the property of their debtors, which are recognized as proceedings *in rem*, we find no conflict in the authorities. Mr. GREENLEAF in his first volume on evidence, section 542, says: "But in this class of cases we are especially to bear in mind, that, to make any judgment effectual, the court must *possess* and *exercise a rightful* jurisdiction over the *Res*, and also over the person, at least so far as the *Res* is concerned; otherwise the proceedings will be disregarded. And if the jurisdiction over the *Res* be well founded, but not over the person, except as to the *Res*, the judgment will not be either conclusive or binding upon the party *in personam*, although it may be *in rem*."

In *Lincoln* v. *Tower*, 2 McLean, 473, which was an action of debt on a judgment obtained in Massachusetts, it is held, that "no State can bind, by its judgments personally, a defendant who is not within its jurisdiction and on whom no notice has been served."

Mr. Justice McLEAN in the opinion in that case says: "We can entertain no doubt when a record of a judgment is offered in evidence, if a want of jurisdiction is shown, or appears upon the face of the proceeding, it must be held wholly void. If the proceeding has been by attachment, and no *personal notice* has been given, and the defendant has not appeared, it does not bind the defendant. It is an *ex parte* proceeding, and beyond the property attached, and the local jurisdiction, the judgment establishes no right against him." Mr. Justice STORY, in his Conflict of Laws, 461, treating on this subject, says: "In such cases, for the purposes of a suit, the existence of property within the territory (other than that where the defendant resides) constitutes a just ground of proceeding to enforce the rights of the plaintiff, to the extent of subjecting such property to execution upon the decree or judgment. But it is to be treated to all intents and purposes, if the defendant has

·never appeared and contested the suit, as a mere proceeding *in rem, and not personally binding on the party as a decree or judgment."* See, also, *Philips* v. *Halker,* 1 Dall. 261; *Bowling* v. *Bird's Executors,* 13 ·Johns. 192; *Bissell* v. *Briggs,* 9 Mass. 462; *Thompson* v. *Emert,* 4 McLean, 96; *Darrance* v. *Preston,* 18 Iowa, 396 ;· *Weil et al.* v. *Lowenthal,* 10 id. 575.

In *Downer* v. *Shaw,* 2 Foster (N. H.), 277, which was an action on a judgment obtained in Vermont, it was held : " Where the property· of a defendant residing in another State is attached on *mesne* process, notice of the pendency of the suit given to the defendant without the limits of the State where the suit is pending is not sufficient to give the court jurisdiction of his person. And in such case if a judgment is rendered against the defendant living. out of the State where the action is pending, the judgment is inoperative out of the State where it is rendered, unless the court obtained jurisdiction of the defendant's person." See opinion of PERLEY, J., in that case, and authorities cited.

In *Kane* v. *Cook,* 8 Cal. 449, which was an action for goods sold and delivered, and in which the defendant pleaded a former recovery in the State of New York, the court held, that the judgment obtained in New York by publication of summons against the defendant, then out· of the State in which the same was rendered, though it might be enforced against his property in that State, has no binding force *in personam,* and is a mere *nullity* when attempted to be enforced in another State, either as the foundation of an action or in support of a plea of former recovery. The opinion was delivered by FIELD, J., now of the supreme court of the United States, in the course of which the learned judge says: " In order to entitle the judgment rendered in any court of the United States to the full faith and credit mentioned in the federal constitution, the court must have had jurisdiction, not only of the cause, *but of the parties;*" that failing in the latter the

judgment is of no validity as a plea of former recovery in an action on the original demand.

In *Woodruff* v. *Taylor*, 20 Vt. 65, where the defendant pleaded a judgment rendered in Canada, in bar of the action, HALL, J., delivering the opinion of the court, says: "Judgments, in regard to their conclusive effects as estoppels, are of two classes — judgments *in personam* and judgments *in rem*. The judgment pleaded in this case cannot be supported as a judgment *in personam*, because the court rendering it had no jurisdiction of the person of the plaintiff, he being a citizen of another government and having no notice of the suit. As a proceeding against his person, the judgment was *coram non judice*, a mere nullity. This is too plain to need argument, and is, indeed, conceded by the counsel for defendant. A judgment *in rem* I understand to be an adjudication, pronounced upon the *status* of some particular matter, by a tribunal having competent authority for that purpose. It differs from a judgment *in personam* in this, that the latter judgment is, in form and substance, between the parties claiming the right, and that it is so *inter partes* appears by the record itself. A judgment *in rem* is founded on a proceeding instituted, not against the person as such, but against or upon the *thing* or subject-matter itself, whose state or condition is to be determined. It is a proceeding to determine the state or condition of the *thing;* and the judgment is a solemn declaration upon the *status* of the *thing*." " An attachment of property in this State, where the court has jurisdiction of the property but not of the person of the defendant, and a sale under it on execution is in the nature of a proceeding *in rem*. The judgment, if the defendant have no notice, would be treated as a nullity out of one jurisdiction, so far as the person of the defendant was concerned; though it would be held binding as between the parties, so far as regarded the property, as a proceeding *in rem*."

In *Jones* v. *Spencer*, 15 Wis. 583, the court held that a judgment in an attachment suit in a court of another State, where there was no service of process upon the defendant and no appearance by him, binds only the prop erty of the defendant proceeded against in such State. PAINE, J., delivering the opinion, says: "The only question presented in this case is, whether a judgment rendered in an attachment suit in another State, where there was no service upon the defendant and no appearance by him, is binding upon him in this State. We suppose it to be well settled that it is not." Citing *Rape* v. *Heaton*, 9 Wis. 328; *Jarvis* v. *Barrett*, 14 id. 591.

In *Sim* v. *Frank*, 25 Ill. 125, it was held, that a judg ment of another State is a nullity in Illinois, as a personal judgment, if the defendant had not entered an appearance, or process had not been served upon him in the State where the judgment was rendered, and that a statute of such State authorizing such judgment can only be binding on one who is within the State, and not upon one who is a citizen of another State at the time the judgment was rendered.

Again, by the common law of this country, independent of the federal constitution and the act of congress of 1790, a judgment rendered in one State, where the defendant had been personally served with process, was only *prima facie* evidence, and subject to be inquired into by plea of *nil debet* when sued on in another State. *Darcy* v. *Ketchum*, 11 How. (U. S.) 172.

To remedy this evil and provide that such inquiry and double defense should not be allowed was the principal object of the constitutional provision, that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State;" and to carry this provision into effect, the act of congress of May 26, 1790, was passed, providing that the "records and judicial proceedings of one State shall have the same

faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from whence said records are or shall be taken." *Mills* v. *Duryee*, 7 Cranch, 483; *Darcy* v. *Ketchum*, 11 How. (U. S.) 172..

"On the other hand," says the supreme court of the United States, in the case last cited, "The international law as it existed among the States in 1790, was, that a judgment rendered in one State, assuming to bind the person of a citizen of another, was void within the foreign State, when the defendant had not been served with process or voluntarily made defense, because neither the legislative jurisdiction nor that of the courts of justice had any binding force." And it is decided in that case, that the act of congress, giving to judgments rendered in one State the same force and effect in all courts of the United States as they have in the courts of the State where rendered, does not apply to a judgment recovered against a nonresident defendant who has not been served with process and made no defense, and that such a judgment is not entitled to any faith or credit out of the State in which it was rendered. The learned judge, delivering the opinion in that case, says: "When we look to the previous law, and the evil intended to be remedied by the framers of the constitution and by congress, we cannot bring our minds to doubt that the act of 1790 does not operate on, or give additional force to, the judgment" thus obtained. "We concur with the various decisions made by State courts, holding that congress did not intend to embrace judicial records of this description."

Many other cases in accord with those referred to could be cited, but we deem it unnecessary. Our examination has been somewhat extensive, and we have failed to find any case holding a contrary doctrine. In view of the numerous decisions cited, we unite in holding:

*First*, that an unsatisfied judgment rendered in

another State, whether property is attached or not, where the defendant is at the time a resident of this State and has not been served with notice of the pendency of the action within the foreign jurisdiction, and has made no appearance to the action, has no binding force or effect upon the defendant *in personam*, so that an action can be maintained thereon in this State to recover the amount of the judgment.

*Second*, that such judgment (being unsatisfied) has no force or effect in this State as a former adjudication of the cause of action on which it professes to be founded.

*Third*, the court (a majority) holds that, to the extent of the property seized and sold in the attachment proceedings in satisfaction of the judgment therein, the defendant in such proceedings is concluded from recovering the value thereof in an action in this State against the plaintiff in the foreign judgment, unless in a proper case he can show that it was procured through fraud. That, upon the same principle on which it is held that the proceedings *in rem* are binding and conclusive as to the title and disposition of the property seized and subjected to sale in payment of the plaintiff's claim, the defendant is also concluded from recovering in another action the value of the property thus seized and sold.

To this last holding of the court, the writer of this opinion does not assent, but, on the contrary, holds that on principle and the authorities cited herein, the judgment, whether satisfied or not, is entitled to no faith or credit whatever *in personam* out of the State where the same was rendered, and has no force or validity whatever beyond the *title* of the property sold, and consequently that the plaintiffs in this action may maintain an action to recover the value of such property by showing that the attachment proceedings were based upon a false or unfounded claim.

It results from the holding of the court that the judg-

ment and proceedings in the attachment suit in Illinois, pleaded by defendants as a justification of the sale and conversion of a part of the goods for which plaintiffs in this action sue, as a plea, must be regarded as a bar to their right of recovery for the value of the goods so sold, unless in the proper proceeding it is shown to have been fraudulently obtained; but it is of no validity beyond this.

As the various rulings of the district court were based upon a different theory of the law from that herein expressed, the judgment is reversed and a new trial ordered.

Reversed.