[Civ. No. 725.    Third Appellate District.—December 22, 1910.]

## JOHN C. DAVIS, Respondent, v. RAWHIDE GOLD MINING COMPANY, Appellant.

ACTION ON NONTRANSFERABLE MINERS' CHECKS ASSIGNED BY DRAWEE— SUPPORT OF FINDING — AGREEMENT OF PARTIES. — In an action against a mining company on miners' labor checks assigned by the drawee, it is held that the evidence fully justified the court in finding that the checks were by the agreement of the parties, including the consent of the mining company, assignable by the drawee, though in terms made nontransferable for the protection of the drawee.

Id.—Non-negotiability — Subjection to Defenses. — Such checks in their form are not negotiable, and are subject to defenses interposed by the mining company against plaintiff's assignor thereof.

Id.—Defense of Offset—Ignorance of Plaintiff Before Answer—Proof of Countervailing Debt in Avoidance.—Since new matter in the answer is deemed controverted, and an offset pleaded therein against plaintiff's assignor was unknown to plaintiff before answer, he is not precluded from proving in avoidance of such offset a countervailing debt of defendant to his assignor, which is more than sufficient to counterbalance the same.

Id.—Countervailing Debt Transferred to Federal Court—Assignment to Plaintiff's Assignor—Jurisdiction.—Where the countervailing debt sued upon by its then owner in the state court was by the mining company defendant transferred to the federal court, and the cause of action therein was transferred to plaintiff's assignor, the federal court would give effect to section 385 of the Code of Civil Procedure, providing, in case of a transfer of plaintiff's interest, that the action may be continued in the name of the original party or in the name of the party to which the transfer is made. It was not an evasion of the jurisdiction of the federal court, when an offset was pleaded in this action by defendant against plaintiff's assignor, to prove such countervailing debt in avoidance of such offset.

Id.—Effect of Offsets—Remanding of Mining Company to Counterclaim in Federal Court—Jurisdiction not Affected.—The effect of such offsets by way of avoidance, the avoiding claim being larger than the offset, was to remand the mining company defendant to its relief by counterclaim or setoff in the federal action, and not to deprive the federal court of jurisdiction.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

Samuel Shortridge, and C. M. C. Peters, for Appellant.

Rowan Hardin, and J. B. Curtin, for Respondent.

CHIPMAN, P. J.—This is an action to recover the amount represented by certain sixty-eight checks or drafts drawn by defendant, payable to sundry persons, of which said checks or drafts Charles Zany, plaintiff's assignor, was drawee. These checks read as shown by the following example:

"Not Transferable.                                    No. 1055.

"Quartz, California, Jan. 29, 1909.

"Office of the Rawhide Gold Mining Co.

"Pay to F. Nelson only                               $30.25

"Thirty 25/100    ·                                  Dollars

"Due for labor for the month of Jan. 1909.

"THE RAWHIDE GOLD MINING CO.

"C. E. LANG.

"To C. Zany.

"Quit.  Quartz, Cal."

Across the left-hand margin words "App Mine" appeared and the check was indorsed on back as follows: "F. Nelson." "Chas. Zany, John C. Davis."

The aggregate total of the sixty-eight checks was $1,714.60.

A general demurrer to the complaint was overruled and defendant answered: Denied that defendant had agreed to pay the sums represented by said checks to Charles Zany; denied that Zany had sold or assigned said drafts to plaintiff or that plaintiff is the owner or holder thereof; denied that the amount claimed or any amount is now due on said drafts, or that defendant has failed or neglected to pay the same. In answering further it was alleged: That each of said drafts was, at all times mentioned in said complaint, known by plaintiff to be non-negotiable and nontransferable by their terms and "by express agreement between said Charles Zany and said defendant." As a further and separate defense, averred: That within two years last past said Zany was indebted to various persons in the sum of $1,896.52 for goods, wares and merchandise sold and delivered and for labor rendered to said Zany; that prior to the assignment of the drafts referred to in plaintiff's complaint, plaintiff had knowledge that said Zany was indebted to defendant in the sum of $1,896.52 as aforesaid and that said various persons had assigned to defendant all of their several claims against said Zany and defendant is the owner and holder thereof; that plaintiff is not and never was the real owner or holder of said drafts as alleged in said complaint or any sum of money represented thereby and the action was commenced and is prosecuted by plaintiff as agent of said Zany and for his sole and exclusive benefit. Defendant prays that the demand

of defendant against said Zany be set off against and deducted from plaintiff's demand; that plaintiff take nothing and that defendant have such other relief as may be legal and equitable.

The court made the following findings:

"2. That on or about the month of February, 1908, the defendant made and entered into an agreement with one Charles Zany, whereby it was agreed that defendant should pay its employees at the App Mine in Tuolumne county in checks or drafts drawn in favor of such employees upon said Charles Zany, and said Charles Zany agreed to pay each of such checks or drafts when the same were presented to him by the employees of defendant, and that all money so paid by said Charles Zany for defendant should be paid by defendant to said Charles Zany as soon as Charles Zany had paid time checks or drafts amounting to $500, and that defendant's officers and agents and said Charles Zany referred to said method of payment as by checks or drafts and said checks or drafts are one and the same instrument and will be mentioned as such in these findings.

"3. That prior to the commencement of the above-entitled action and within two years prior to the commencement of said action, and during the months of December, 1908, January and February, 1909, the said defendant in accordance with said agreement mentioned in finding II hereof, issued its checks or drafts of various amounts to its various employees, all of which said checks or drafts were drawn payable by said Charles Zany, the total of which said checks or drafts issued during said months by defendant and to be paid by said Charles Zany amounted to the sum of $2,116.00 and that all of said checks or drafts so issued during said months. and amounting to said sum of $2,116.00 were by said various employees presented to and were paid by said Charles Zany."

The court found further: That prior to the commencement of the action and for a valuable consideration Zany sold and assigned and delivered the checks or drafts in question (being checks or drafts referred to in the findings), and plaintiff is the owner and holder thereof in the amount of $1,714.60, which said sum is a valid indebtedness of the defendant incurred within two years prior to the commencement of the action; that none of said checks or drafts have been paid and the whole of

said sum of $1,714.60 is due and owing to plaintiff from defendant and that prior to the commencement of the action plaintiff demanded payment thereof from defendant; that all of said checks or drafts referred to in plaintiff's complaint, and at all times mentioned therein, were known to plaintiff to be non-negotiable instruments, but said checks or drafts are instruments transferable by assignment and indorsement; "and said checks or drafts were not known by plaintiff to be nontransferable by their tenor and terms or by express agreement between said Charles Zany and said defendant"; that the legal title to said checks was sold and transferred to plaintiff and in and to the sum of money represented thereby.

Upon defendant's setoff the court found: That Zany was indebted to various persons as alleged in the answer, and that their claims were assigned to defendant prior to the assignment of said checks to plaintiff, but that defendant was at the time of the trial and now is owing to Zany over $1,896.52, and more than enough to fully pay said indebtedness assigned to defendant against said Zany, and said indebtedness of defendant was by valid assignment acquired by said Zany on the twenty-second day of June, 1909, from a creditor of Zany; that prior to the assignment of said checks by Zany to plaintiff, as alleged in the complaint, plaintiff did not have knowledge, nor did he have knowledge at the time the answer of the defendant was filed, that Zany was indebted to said various persons in the sum of $1,896.52 or that said persons had assigned said claims to defendant or that defendant was the owner and holder of the said demands; that plaintiff is the real party in interest and prosecutes this action for his own benefit and the action was not commenced by him as agent or representative of said Zany.

As conclusions of law the court found: 1. That the checks or drafts aforementioned are instruments transferable by assignment; 2. That they were duly assigned to plaintiff; 3. That defendant is not entitled to offset the demand of plaintiff for the sum of $1,714.60 or to any amount by reason of the indebtedness assigned to defendant by creditors of Zany; 4. That plaintiff is entitled to judgment for the sum of $1,714.60 and his costs herein. Judgment was accordingly entered, from which and from the order denying its motion for a new trial, defendant appeals.

There are three questions presented by appellant, namely:

1. In view of the form of the checks and the alleged agreement as to nonassignability, did plaintiff acquire title to them?

2. Should the defendant's setoff have been allowed?

3. Did plaintiff succeed in avoiding defendant's alleged setoff?

It appears from the evidence without conflict that defendant was operating the so-called App mine and arranged with Zany, plaintiff's assignor, to board the men working at the mine for an agreed compensation. A further arrangement was made by defendant with Zany by which Zany was to advance money to pay checks or drafts drawn on him by defendant to pay the men working at the mine, and, whenever these checks thus paid amounted to $500, Zany was to return them to defendant, and defendant was to give him a check on the bank where it had an account. It appeared also without conflict that there was a further arrangement between Zany and defendant by which Zany was to send to defendant before payday a list of names and amounts due Zany from each miner for board, and these amounts would be deducted by defendant, and its check or draft on Zany was given to the miner for the balance.

It is claimed, and it is so alleged by defendant in its answer, that these checks were made nontransferable "by their tenor and terms and by express agreement between said Charles Zany and said defendant," and that this agreement was to the effect that the checks paid by Zany were not to be redeemed or paid by defendant unless upon settlement at the time presented there was a balance due Zany and to the extent only of such balance. In their dealings with each other defendant would at times have some bills or claims against Zany from persons furnishing him goods, and these were adjusted at settlement periods. Plaintiff claimed that the agreement was that defendant should pay the amount due as shown by the checks regardless of any accounting or settlement; that the reason for making the checks nontransferable and payable "only" to the payee named was to compel the payee to go to Zany for his money, who could then deduct from the check any sum due him from the payee for goods or liquors furnished him by Zany; that so far as Zany was concerned, the

15 Cal. App.—8

checks were assignable, and that the form of the checks was adopted for his protection alone.

1. Much attention is given by counsel to the question, whether or not the checks or drafts in their form were capable of being assigned or of conferring any right whatever upon plaintiff as assignee of the drawee. The law on the subject is shown in the briefs with commendable fullness, but, of course, with the customary disagreement of counsel as to what the law really is.

In view of the evidence, conflicting on the point though it is, we find it unnecessary to enter upon a discussion of the question. The cause was tried upon the theory that there was an agreement between defendant and Zany as to their intention in using the phraseology adopted in drawing the checks or drafts, and this was the real question to be determined. The evidence fully justified the court in finding that the checks were, in accordance with the agreement of the parties, assignable by Zany, the drawee, though by their terms made nontransferable. They were so treated by the defendant and Zany on several occasions, and there is evidence that the president of defendant corporation told Zany that he could negotiate them. Plaintiff testified that he bought and paid for checks $1,313.10 on the eighteenth day of February and $401.50 on February 23, 1909, and that he demanded payment from defendant and was refused, and no part of the amount due on the checks has been paid.

2. It is conceded that in their form they were not negotiable paper, and that plaintiff took them subject to any defenses properly interposed by defendant.

It was alleged in the answer and is now claimed that Zany became indebted to various persons in the sum of $1,896.52, for goods, wares and merchandise and for labor rendered Zany, and that prior to the assignment of said checks to plaintiff said various persons to whom Zany was indebted as aforesaid, sold, assigned and transferred to defendant each and every of said claims, and that prior to said assignment to plaintiff by Zany the plaintiff had knowledge that Zany was indebted to said various persons, and that said persons had sold and assigned said claims to defendant. The court found these alleged facts to be true except as to plaintiff's alleged knowledge of said indebtedness of Zany to said various per-

sons and the assignment to defendant, as to which the court found, on sufficient evidence, that plaintiff had no knowledge up to the time of filing the answer. The court also found that ''at the time of the trial of said action defendant was and now is owing to Charles Zany over $1,896.52, and more than enough to pay said indebtedness assigned to defendant against said Charles Zany . . . which said indebtedness so held by said Charles Zany against said defendant, was by a valid and legal assignment, duly acquired by said Charles Zany on the twenty-second day of June, 1909, from a creditor of said defendant.''

The findings assume that defendant showed a valid setoff, but that it was fully covered by an indebtedness of defendant to Zany in excess of the claims held by defendant against him.

It appeared that Zany, on December 5, 1908, with defendant's knowledge and consent, executed an assignment to one Ben Valverde of ''all moneys, debts, dues, accounts, time checks, board bills, and accounts due or owing'' to Zany from the defendant, including by its terms the checks in dispute. This assignment to Valverde does not seem to have prevented Zany from presenting checks to defendant for payment as before, but defendant, having knowledge of the assignment, required Valverde's indorsement.

On February 16, 1909, Valverde reassigned to Zany all his ''interest in any time checks and moneys due thereon'' assigned to Valverde, by virtue of the assignment of December 3, 1908, including the checks in dispute, so that when Zany subsequently assigned them to plaintiff, Valverde no longer had any claim upon them and Zany was free to do with them as he willed.

It further appeared by the testimony of defendant's bookkeeper, Lang, that the board bill due Zany from defendant for January, 1909, amounted to $1,559.15 and for February, $1,495.40. The witness testified: ''No part of either of these sums has been paid. If these amounts were not assigned to anybody, that would be the amount coming to Mr. Zany, less the orders; that would be the correct amount due Mr. Zany if he hadn't assigned the same and there were no offsets.'' These two sums amount to $3,054.55, more than enough to offset the claims of the various persons assigned to defendant and included in its setoff, amounting, as claimed, to $1,896.52.

On February 23d Valverde commenced an action against defendant in the superior court to recover on the assigned claims he still held, amounting to $3,592.85, being claims for board of the men working at defendant's mine. It was shown that this action did not include the checks assigned to plaintiff, but it did include the claims embraced in plaintiff's set-off to defendant's setoff. The complaint in the present action was filed March 27, 1909, and the answer May 1, 1909. The trial began on July 27, 1909, but on June 21, 1909, Valverde reassigned to Zany all claims and all interest therein assigned to him on the fifth day of December, 1908, and also "any and all causes of action commenced by me (Valverde) on any of said accounts so assigned to me as aforesaid, and I do hereby authorize said party of the second part (Zany) to collect the same, using any and all lawful means whether in my name or otherwise so to do, hereby ratifying any and all acts of said party of the second part taken in the premises."

It appeared that on motion of defendant in the action brought by Valverde in the superior court, the cause was transferred to the United States circuit court, prior to June 22, 1909, and defendant's contention now is that the reassignment by Valverde to Zany of the claims involved in the suit in the federal court was ineffective and could not defeat defendant's setoff pleaded in this action. Counsel for plaintiff state, in their points and authorities, that after Valverde reassigned his claims to Zany the latter filed a supplemental complaint in the United States circuit court in said action, "in which complaint he admitted all of the legal claims which defendant holds against him and asked that they be deducted from the original demand in said action, and as the case then stood the circuit court was deprived of jurisdiction. Whereupon a motion to dismiss the action without prejudice, so that said action could be commenced in the state courts, was granted on March 25, 1910." It is then stated that Zany, on April 1, 1910, "recommenced an action on said subject matter in the superior court of Tuolumne county and in said action admits all the valid claims held by defendant, which said valid claims amount to $1,619.27 and are the same claims which defendant sought to set off against plaintiff's claim in this action on appeal. Defendant filed an answer to said action on the 31st of May, 1910, and the case is at present (plaintiff's brief was

filed June 30, 1910) set for trial for July 6, 1910." In their reply brief, filed July 11, 1910, counsel for defendant do not deny this statement or challenge its correctness, but content themselves with a rebuke to counsel for plaintiff for devoting "many pages of their ill-tempered brief to an idle and unwarranted statement of matters admittedly not contained in the record." We do not approve of the practice complained of, but it seems to us that the statement above set forth is of such a character as to have called for a distinct and unequivocal denial if not true. We are asked to decide the point made by defendant on the assumption that the action commenced by Valverde against this defendant is now pending in the United States circuit court—defendant claiming that "the whole case—parties and subject matter—was in the circuit court subject to its exclusive jurisdiction," and hence no valid reassignment by Valverde to Zany was possible. We think the court would be justified in treating the question as moot. But as the same point might be urged in view of the pendency of the action in the state court, we will consider it. Disregarding the foregoing alleged facts: The federal court would give effect to section 385 of the Code of Civil Procedure, which provides, in case of a transfer of plaintiff's interest, that the action may be continued in the name of the original party, or in the name of the party to whom the transfer is made. (U. S. Comp. Stats. 1901, p. 684; *Renaud* v. *Abbott*, 116 U. S. 277, [6 Sup. Ct. Rep. 1194, 29 L. Ed. 629].) See *Lindsay* v. *Stewart*, 72 Cal. 540, [14 Pac. 516], as showing that the plaintiff could plead as defensive matter items which were included in a then pending action in the justice's court where the parties were reversed. *Steele* v. *Sellman*, 79 Md. 1, [28 Atl. 811], is cited, in which the court said: "The principles governing the defense of setoff are, in this respect, distinctly applicable to this subject, and it was held, so early as in the time of Lord Mansfield, that the pendency of a prior action for defendant's claim did not prevent his using it as a setoff —not even if his prior action had progressed to a verdict." It does not seem to us that there is any evasion of the jurisdiction of the federal court sought by plaintiff. The effect of his setoff is to remand defendant to its relief by counterclaim or setoff in the Valverde action and not to deprive the federal court of jurisdiction.

3. That plaintiff could avail himself of the defense to defendant's setoff we have no doubt. Any new matter in the answer in avoidance or constituting a defense or counterclaim must on the trial be deemed controverted by the opposite party (Code Civ. Proc., sec. 462); and the plaintiff may, in avoidance of defendant's setoff, show a counter-balancing indebtedness of defendant to plaintiff's assignor. This was expressly held in *Hart* v. *Cooper*, 47 Cal. 77.

At the time plaintiff purchased the liabilities of defendant he had no knowledge or notice of any claims held by defendant against his assignor, Zany, nor until defendant pleaded them in his answer. He was not, therefore, precluded from using the indebtedness of defendant to his assignor by way of avoidance. (25 Ency. of Law, p. 604; *St. Louis Nat. Bank* v. *Gay*, 101 Cal. 286, [35 Pac. 876].)

No other assignment of error seems to call for notice.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.