[Crim. No. 3417. In Bank.—June 30, 1931.]

THE PEOPLE, Respondent, v. TRESO LACANG, Appellant.

John F. O'Sullivan for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

PRESTON, J.—In this cause defendant, charged by information with the crime of murder, plead not guilty, and also not guilty by reason of insanity. Trial was had upon the question of his guilt and the jury returned a verdict of

guilty without recommendation. His plea of not guilty by reason of insanity was thereupon withdrawn. Judgment of conviction imposing the death penalty followed, and from said judgment and the order denying his motion for new trial defendant now appeals upon the ground that the court erred in permitting the admission of certain evidence, in allowing an interpreter for witness Emoto and in refusing to give to the jury certain requested instructions.

■ We find the record to be free from prejudicial error; hence but a brief statement is necessary. There is no question of the sufficiency of the evidence to support the verdict and judgment. In July, 1929, appellant, a twenty-four year old Filipino, and the deceased, an eighteen year old American girl, ran away and were married without the consent of the girl's parents. Appellant secured employment on a ranch in Fresno County, picking grapes and doing other labor, superintended by Roy Emoto. His wife, after returning to her parents for some six months, rejoined appellant in the spring of 1930 and thereafter, early in June, gave birth to a child. After her confinement in the hospital she convalesced about six days at the home of said Emoto under the care of his wife. She then returned with her baby to appellant's house.

On the evening of July 2, 1930, after a quarrel, appellant took a butcher knife, stabbed her with it as she lay in bed, and killed her, also cutting his own body in several places in an alleged effort to destroy himself. The motive actuating the crime is shown by conflicting evidence. Some witnesses testified that appellant said he killed his wife because she was about to leave him and because of dissension between them, and a letter was admitted in evidence, written by the deceased on the day in question to her mother, stating that she was nervous and torn up, and asking her mother to send her money for her fare home. There was also testimony that the deceased had tried to get away but that appellant had found her each time and induced her to stay with him. Appellant's final explanation, however, was that he caught said Emoto and his wife in the act of having illicit relations on the evening in question and that while still emotionally aroused over the situation and his suspicions of past indiscretions on the part of his wife with other Filipinos, he killed her. Witness Emoto denied intimacy or improper

conduct with the deceased, stating that his presence on the premises was to see that she was not annoyed by a Filipino boy whom she feared. Witness Dr. Sciaroni testified that the physical condition of the deceased, due to recent child-birth, was such that sexual intercourse would probably have been prohibited. There is also other evidence tending to show that appellant's suspicion of improper relations between the deceased and Emoto was unfounded.

After committing the crime appellant called at the house of a neighbor, told what he had done and asked that the sheriff be called. Later, when in custody, appellant again freely admitted the crime and gave a detailed account of his actions to the sheriff and other officers and to the doctor who treated him. He gave like testimony upon the trial.

■ Appellant's first contention is that the court erred in permitting Dr. Sciaroni, who performed an autopsy on the body of the deceased, to testify that the death wounds were so placed that in his opinion they could not have been self-inflicted. Appellant argues that this expert testimony was inadmissible because it expressed a conclusion upon a subject within the common knowledge and observation of the jurors, who had before them photographs of the body of deceased, showing the position of the wounds and the position in which deceased and the said knife were found after the killing; hence they did not need the assistance of an expert to aid them in determining whether said wounds could have been self-inflicted. Without passing upon the question of admissibility of this evidence, it is enough to say that obviously appellant's cause was not prejudiced in any way by it, for the jurors knew that appellant himself inflicted the death wounds. Appellant admitted it many times and testified to it in detail. No doubt whatsoever remained as to the manner in which the death occurred.

■ Appellant next contends that the court erred in permitting Roy Emoto to testify as to various conversations had by him with the deceased and with appellant, upon the ground that they were hearsay, formed no part of the principal transaction, and may have led the jury to believe that appellant killed his wife solely because she was going to leave him. This contention is without merit, as the statements complained of were practically all made in the presence of appellant himself at a time immediately

preceding the killing and they bore witness to the existence of dissension between appellant and the deceased and to the motive which led to commission of the crime. Furthermore, if the admission of any of this testimony did constitute error, we would be constrained to hold that such error was not prejudicial in view of the unequivocal evidence of appellant's guilt. The latter statement applies also to appellant's contention that the court erred in admitting in evidence the above-mentioned letter written by the deceased on the day of the crime to her mother.

It is equally clear that there was no abuse of discretion on the part of the court in permitting witness Emoto to testify through an interpreter. His examination was commenced without an interpreter, and though he understood English to quite an extent, it soon became apparent that the calling of an interpreter would facilitate matters, as it later proved. This was a matter within the discretion of the trial court and to our mind the record shows that here there was a wise use rather than an abuse of such discretion.

We likewise find no error in refusing certain instructions offered by appellant. Without setting them forth we will state that it is questionable whether they contained a correct statement of the law on the subject of the establishment of the *corpus delicti* prior to consideration of a confession by the accused. The charge as given by the court contained ample instructions on all matters necessary to a proper determination of the cause.

With greatest care we have examined all the contentions of appellant, but find the record to be free from prejudicial error of any character.

The judgment is affirmed.

Richards, J., Seawell, J., Shenk, J., and Langdon, J., concurred.

Rehearing denied.