[Crim. No. 1749. First Appellate District, Division Two.—October 31, 1933.]

THE PEOPLE, Respondent, v. NICK SANTOS, Appellant.

Raine Ewell for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

SPENCE, J.—Defendant and another Filipino named Vicente Fajardo were jointly indicted for the murder of Karl T. Eyman. The deceased was a soldier serving at Letterman hospital at the Presidio in San Francisco. There was a severance of the trials of the two defendants. The defendant Nick Santos was tried first and found guilty of murder of the second degree. He was sentenced to the

state prison for the term prescribed by law. Said defendant appeals from the judgment of conviction and the order denying his motion for a new trial.

On the evening of December 25, 1932, the deceased was found lying on O'Farrell Street between Pierce and Steiner Streets in San Francisco. He was unconscious when the police arrived and he died in the ambulance while en route to the hospital. The autopsy showed that deceased had several "stab wounds" about his body, two of which were inflicted in his back. One wound about three inches deep was inflicted on the right side of the neck, where one of the large arteries was severed. In the opinion of the autopsy surgeon, deceased died of exsanguination due particularly to this last-mentioned wound.

At trial of the defendant Santos, the prosecution called Fajardo as a witness. The uncontradicted testimony, including the admission of the defendant Santos, showed that Santos had wielded the knife which had inflicted the wounds upon the deceased. It appears that defendant and the deceased had been rivals seeking the affections of a young woman named Enriquita Valenzuela. According to defendant, he had met the deceased a month or more before December 25, 1932, when he found the deceased waiting in front of the girl's home. Each told the other, "It is my girl." The girl soon arrived and the deceased spoke to her on the street out of the hearing of the defendant. The deceased and the girl then went into her house. The defendant followed and told the girl, "You are a nice girl to treat me that way," and then went home leaving the deceased with her. Defendant and the deceased did not meet again until Christmas night shortly before the stabbing took place. The previous night the defendant had taken the girl to a dance at the Filipino club. He testified that he made an engagement at that time to take her to a show on Christmas night. The girl testified that no such engagement had been made, but that defendant appeared at her home about 6 P. M. on Christmas night and then invited her to go to the theater. She told him she could not go. He left and returned about 7:30 P. M. He did not ring the bell but was hiding in a near-by doorway when seen by the girl. The deceased was present in the girl's house at the time. The girl opened the door and

asked defendant what he was doing, to which he replied, "Never mind, I am waiting for someone." Defendant, with one hand in his pocket, forced his way in and asked, "Who you got in there?" She replied, "You know who I got in here, it is my fiancé." Defendant proceeded into the house without invitation and the girl called to the deceased that "someone was coming, to look out". The deceased grabbed defendant by the hand and put him out of the house, saying, "Didn't I tell you not to bother this girl?" Defendant proceeded to the Filipino club, met Fajardo and asked him to go "for a little trouble down at a girl friend's house". Fajardo went with the defendant and the two waited for about five minutes on the sidewalk near the house. When the deceased left the house and was crossing O'Farrell Street defendant called him back, saying, "Young man, come here." A conversation ensued, during which defendant struck the deceased. In the fight which followed, defendant was knocked down in the middle of O'Farrell Street. Deceased then started toward Fajardo but Fajardo pushed him away and ran across the street. There was no blood on the deceased at that time. Defendant was again on his feet and the fight with the deceased was resumed. Seeing blood on the face of the deceased, Fajardo called to defendant to leave. The deceased shouted, "Help, help," while defendant and Fajardo ran from the scene.

Some hours later defendant was apprehended in bed at his home. Shortly thereafter he was questioned and signed a statement in the nature of a confession. In this statement he said in part, "I dropped to my hands and knees and took a knife from my upper right vest pocket with my left hand, this was a knife with a spring blade and I opened it and struck Karl T. Eyman with it a number of times." Nothing was said in the statement about self-defense nor was anything said therein about any threats on the part of the deceased. A newspaper reporter talked to defendant at the hall of justice when defendant's statement was taken. The reporter testified, "I asked the defendant if he had stabbed Mr. Eyman and he said yes. I said: 'That is rather a serious crime.' I said, 'Why did you do it?' And he said: 'Well, he stole my girl.'" Upon the trial, defendant claimed that the killing was done in self-defense. He took the stand as a witness and in reply

to practically every question directly relating to the encounter with the deceased, he employed the term "self-defense" in his answer. The uncontradicted testimony shows, however, that although the scene of the killing was in a thickly populated portion of the city, defendant made no outcry or other appeal for help at any time during the fight. The uncontradicted testimony further shows that he did not attempt to get away at any time before stabbing the deceased and that his flight immediately followed the stabbing.

On this appeal appellant has listed 43 specifications of error. Some of these are argued at length, but with respect to many of said specifications appellant has merely stated his claim of error without argument or citation of authority. By way of example appellant states, "The court erred in refusing to instruct the jury as requested, by defendant, Cl. Tr. 24, L. 12–17."

It has been frequently held that when a bald claim of error is made, unaccompanied by argument or citation of authority, the appellate courts are not required to assume the burden of examining the record and of searching the authorities in order to ascertain whether error was committed and, if so, whether such error was prejudicial. (*People* v. *McLean*, 135 Cal. 306, 309 [67 Pac. 770]; *Gray* v. *Walker*, 157 Cal. 381, 386 [108 Pac. 278]; *People* v. *Titus*, 85 Cal. App. 413, 418 [259 Pac. 465]; *People* v. *Schlosser*, 99 Cal. App. 593 [278 Pac. 898]; *People* v. *Bryant*, 101 Cal. App. 84 [281 Pac. 404].) But despite the fact that such burden does not rest upon this court, the entire record has been read to ascertain whether any of the numerous specifications of error would warrant a reversal herein. A review of the record leads to the conclusion that no prejudicial error was committed and that the judgment and order denying a new trial should be affirmed. We do not feel obliged, however, to discuss in this opinion those contentions which counsel for appellant has not considered of sufficient importance to warrant argument in his brief.

Before proceeding to a consideration of the contentions which are sufficiently argued in appellant's brief to merit discussion here, it is appropriate to state that the record reveals that throughout the trial the patience of

the trial court was sorely tried by the conduct of counsel for appellant. Counsel was continually interposing frivolous objections, unnecessarily interrupting the witnesses, opposing counsel and the court, and otherwise delaying and interfering with the orderly presentation of the cause. The cross-examination of the witnesses for the prosecution was unduly prolonged by propounding the same questions over and over again, by going far beyond the legitimate scope of cross-examination, and by insisting upon delving into wholly irrelevant matters. Counsel was admonished on numerous occasions to discontinue particular lines of examination and to pass to some other subject, but on practically all of these occasions counsel proceeded in defiance of the admonition and asked further questions, which were substantially the same as those to which objections had been repeatedly sustained. Similar conduct followed during the examination of the defendant's witnesses. During the argument, counsel for appellant interrupted the district attorney so frequently that the trial court finally suggested that it be understood for the purposes of the record that counsel for appellant was objecting to "everything the district attorney says". This was agreed to with the further stipulation that counsel for appellant should have an assignment of misconduct as to everything and that it might be understood that he was requesting the court "in each instance" to instruct the jury to disregard each statement made by the district attorney. The interruptions nevertheless continued. The foregoing summary of the conduct of appellant's counsel is set forth, as appellant contends that the trial court erred in admonishing counsel not to ask certain questions and in finally citing counsel to appear at the conclusion of the trial to show cause why he should not be punished for contempt. This contention is wholly without merit. The action of the trial court was entirely justified by the conduct of counsel, to which reference has been made. Under the circumstances disclosed by the record there would have been no error even if the trial court had gone further and actually adjudged counsel in contempt while the jury was present. (*People* v. *Johnson*, 219 Cal. 72 [25 Pac. (2d) 408]; *People* v. *Beitzel*, 207 Cal. 73 [276 Pac. 1006].)

■ Appellant claims error in the refusal of the trial court to dismiss the prosecution under section 1382 of the Penal Code. This section provides for dismissal "unless good cause to the contrary is shown" when the "defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment". In the present case the indictment was found on January 19, 1933, and the trial began on May 11, 1933. The record shows, however, that defendant was arraigned on February 24th and the trial was then set for March 6th. Subsequently "by the consent of respective counsel" the trial was continued to March 20th. On that date it was "continued to be set" to March 25th "with the consent of the respective counsel". It will be noted that this last-mentioned date was more than 60 days after the finding of the indictment. On March 25th counsel for appellant failed to appear and the trial court continued the setting of the trial to March 27th. Counsel again failed to appear on March 27th and at that time the trial was set for April 27th. On April 27th counsel for appellant appeared and moved for a dismissal "for lack of trial within sixty days". The motion was denied and the cause was set for trial for May 11th, on which date the trial began. It is thus apparent that counsel for appellant expressly consented to continuances on two occasions and thereafter failed to appear on two subsequent occasions. His consent to the continuances was equivalent to a postponement upon his application. (*Ray* v. *Superior Court*, 208 Cal. 357 [281 Pac. 391]; *People* v. *Benc*, 130 Cal. 159 [62 Pac. 404]; *People* v. *Peter*, 20 Cal. App. 151 [128 Pac. 415].) The failure of counsel for appellant to appear on the subsequent occasions certainly constituted good cause for further continuances. The motion was therefore properly denied on April 27th. It may be noted that the cause was tried within a reasonable time thereafter and that it does not appear from the record that counsel for appellant was ready and willing to proceed to trial at any time before the cause was actually tried.

■ Appellant also claims that the trial court erred in admitting a photograph of the deceased soldier. The photograph is not made a part of the record on this appeal. It may have been shocking in its nature as indicated by appel-

lant on the oral argument but this would not make it inadmissible. (*People* v. *Burkhart,* 211 Cal. 726 [297 Pac. 11]; *People* v. *Gomez,* 209 Cal. 296 [286 Pac. 998].)

The further claim is made that the trial court erred when it ordered an interpreter for the witness Enriquita Valenzuela. It is stated that said witness testified in English before the grand jury, wrote letters in English and on the trial volunteered certain answers in English. The record on appeal discloses neither the testimony of the witness before the grand jury nor any letters written by the witness. It does appear that on the trial the witness answered certain simple questions without the aid of the interpreter by saying, "Yes" or "Si". But even assuming that the witness could read, write and speak some English, it does not appear that the trial court abused its discretion in ordering an interpreter. The propriety of calling an interpreter is a question addressed to the discretion of the trial court and its action will not be disturbed unless it clearly appears that such discretion has been abused. (*People* v. *Lacang,* 213 Cal. 65 [1 Pac. (2d) 7]; 8 Cal. Jur. 225.) There are authorities indicating that it may be an abuse of discretion to refuse to call an interpreter under some circumstances, but our attention has not been called to any case in which it has been held to be an abuse of discretion to call a properly qualified interpreter.

Appellant also contends that the trial court erred in "refusing a full or free cross-examination of the witness Enriquita Valenzuela". On the cross-examination of this witness, counsel attempted to go far afield. He evidently appreciated the fact that some of his questions were not within the recognized bounds of cross-examination as he stated to the court that he would subsequently call her as his own witness, which he did. An examination of the testimony of this witness shows that counsel was permitted to ask such questions as he desired on all relevant matters and was even permitted to pursue several irrelevant matters. The general complaint made is that counsel was not permitted to show the friendly relationship existing between appellant and the witness "so as to remove from the jury all idea that the defendant came back to the girl's house malignantly to waylay and murder the deceased". For this purpose he attempted to go into all the details of the

relationship between the two over a long period of time. He offered in evidence pictures taken of them together, presents which had been given by one to the other and letters written by the witness to appellant. He also desired to show the places they had gone together and what they had done. We find no error in the rulings of the court excluding such details both on the cross-examination of the witness and on her direct examination when called by appellant. The girl admitted that they were friendly and that she had been out to dances with appellant, the last occasion being on the night before Christmas. Furthermore, we cannot see how the exclusion of such evidence could be prejudicial to appellant. The friendliness of the two being admitted, a showing of a closer relationship between them would only tend to show motive for the killing of the deceased rather than lack of motive.

It is also claimed that the trial court erred in admitting the knife in evidence, the exhibit being a spring knife found in appellant's room after he was arrested. It is argued that the identification of this knife was insufficient in law as it was identified only by the "accomplice Fajardo". We assume that appellant has in mind the provision of section 1111 of the Penal Code. Said section merely prohibits a conviction "upon the testimony of an accomplice unless it is corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense". Said section does not deal with the admissibility of evidence but merely with the sufficiency of the entire evidence to sustain a conviction. Even assuming that Fajardo's testimony identifying the knife was uncorroborated, it was, nevertheless, admissible. It appears from the record, however, that this portion of Fajardo's testimony identifying the knife was corroborated by the admissions of appellant.

Appellant further claims that the trial court erred in admitting the evidence of Officer McGinn regarding the pools of blood on the street. There is no merit in this claim. Such evidence served to show the conditions found to exist at the scene of the crime and was properly admitted. It is stated that there was "nothing to show it was the blood of deceased Karl Eyman". There was no direct evidence to so show but there was ample evidence

from which it might have been inferred. In fact, such was the only rational conclusion which could have been drawn from the evidence introduced.

 It is also urged that the trial court erred in admitting the statement of the appellant. The statement referred to was the confession made by appellant shortly after his arrest. This statement was reduced to typewritten form by an officer and was thereafter signed by appellant. Appellant's claim seems to be based upon the ground that the typewritten statement was not in the exact words used by the appellant in answering the questions put to him during the questioning. It appears, however, that appellant read over the typewritten statement and then signed it. Even if the typewritten statement was not in the exact words originally employed by appellant in his answers to the questions, he adopted the language of the typewritten statement as his own by affixing his signature thereto and such statement was admissible. (*People* v. *Costello*, 87 Cal. App. 313 [162 Pac. 75]; *People* v. *Stevens*, 78 Cal. App. 395 [248 Pac. 696]; *State* v. *Morris*, 83 Or. 429 [163 Pac. 567]; *Commonwealth* v. *Coy*, 157 Mass. 200 [32 N. E. 4].) In *State* v. *Morris*, *supra*, the court said at page 571, "The confession was reduced to narrative form at the defendant's dictation, and was read over and signed by him. It is not inadmissible because it fails to be a *verbatim* statement of his. . . . By signing it and adopting its language, he makes it his own."

 Appellant also objects to the rulings of the trial court "in respect to the questioning of the witness Bennie Sandiego". This witness claimed that he heard appellant arranging to take the girl to a show. The witness kept insisting that the engagement was made for December 26th. Counsel for appellant attempted by repeated questioning to have him change his testimony to show that the engagement was made for December 25th. This witness finally testified, "No, the 25th, the 25th, Christmas day. It is the 25th." Whereupon the trial court said, "The 25th, all right." This clarified the situation as far as this witness' testimony was concerned and the error, if any, in sustaining objections to previous questions regarding this date could not be prejudicial to appellant.

[11] The further contention is made that the trial court erred in asking a certain question of appellant while he was

on the witness-stand. This particular question was asked near the end of the direct examination of appellant. Appellant had been questioned at length regarding all the facts and also regarding his confession. As to the confession he said, ''Well, some of it is my words.'' Counsel then proceeded to read each question and answer to appellant asking him if he had given the answer appearing in the typewritten statement when questioned by officers. In reply appellant denied having made some of the answers and he apparently volunteered a great deal of testimony regarding the facts surrounding the fight. Both counsel and the court attempted on several occasions to make it clear to the witness that he was being interrogated regarding his statement to the officers and not regarding his version of the facts. Near the end of the prolonged examination and after a question and answer which did not clearly indicate what the witness was testifying to the trial court asked, ''What are you doing now? Are you telling us the whole yarn again, or what you told the police officer?'' Counsel took exception to this remark of the court and he now assigns it as error. Objection is made to the use of the word ''yarn''. This word is synonymous with the word ''story'' (Webster's New International Dictionary), which latter word had been used by the appellant himself. At one point in this line of examination the trial court asked, ''What did you say to the officers about that?'' Appellant replied, ''You want me to tell my story?'' While the word ''yarn'' is sometimes used with the implication of untruth or exaggeration it does not necessarily convey that meaning. In the present case it is perfectly clear that the trial court was merely making another attempt to clarify the testimony of appellant by determining whether he was testifying in regard to the story of the fight as previously related by him as a witness or whether he was testifying as to the statement which he had made to the police.

It is further contended that the trial court erred in permitting the prosecution to use the picture of the deceased in the closing argument to the jury. We have heretofore expressed the view that said picture was admissible in evidence. Having been admitted it was entirely proper to make use of the picture at any stage of the argument. Even though the picture may not have been referred to in the opening argument or in the argument on behalf

of appellant as claimed, it could still be properly used in the closing argument. We know of no such rigid limitation upon the use of exhibits as is contended for by appellant and he cites no authority to sustain his position. A similar claim of error is made with respect to the use of the knife in the closing argument to the jury but the knife was likewise admitted in evidence and its use at any time during the argument was entirely proper.

Appellant also contends that the trial court erred in the instructions given on the law of self-defense and justifiable homicide. The trial court very fully and fairly instructed the jury on these subjects. The instructions are quite lengthy and we do not deem it necessary to quote them here. One of the instructions complained of was given in *People* v. *Orosco,* 73 Cal. App. 580 [239 Pac. 82]. It is set forth and approved in the last paragraph on page 599, of the opinion in that case. The remaining instructions complained of find ample support in *People* v. *Emerson,* 130 Cal. 562 [62 Pac. 1069], *People* v. *Campbell,* 30 Cal. 312 and *People* v. *Shimonaka,* 15 Cal. App. 117 [116 Pac. 327]. Appellant cites no authority to support his claim of error in the instructions given. He seems to be of the opinion that it was error for the trial court to do more than read to the jury sections 197 and 198 of the Penal Code, but the authorities cited clearly indicate that it is entirely proper for the trial court to instruct the jury more fully on these subjects.

It is further claimed that the trial court erred in giving any instructions relating to first or second degree murder. Appellant argues that the evidence was insufficient to justify his conviction of any crime greater than manslaughter. In our opinion the prosecution presented ample evidence from which the jury might have inferred all the necessary elements of either the first or second degree murder. Appellant, on the other hand, presented evidence which tended to show that the killing was justifiable or at least to show that no greater crime than manslaughter had been committed. It was for the jury to determine the testimony to be believed and to determine the nature of the crime committed under appropriate instructions from the trial court. There was therefore no error in giving the instruc-

tions relating to first and second degree murder as well as those relating to manslaughter.

Appellant also claims error in the refusal to give a certain requested instruction. Like many other assignments of error relating to the instructions, this proposed instruction is not set forth in the brief nor does the appellant favor the court with any argument. He merely quotes a short statement from *People* v. *Fowler*, 178 Cal. 657 [174 Pac. 892], and another from *People* v. *Hecker*, 109 Cal. 451 [42 Pac. 307, 30 L. R. A. 403]. Such an assignment of error is likewise insufficient to merit consideration by this court. (*People* v. *Chutnacut*, 141 Cal. 682 [75 Pac. 340]; *People* v. *Wademan*, 38 Cal. App. 116 [175 Pac. 791]; *People* v. *Ross*, 60 Cal. App. 163 [212 Pac. 627].) We have nevertheless examined the proposed instruction which related generally to the incompetency of certain types of statements of an accomplice. Even if it be conceded that said instruction was correct as an abstract statement of the law, it does not follow that the trial court erred in refusing to give it. Appellant has not pointed to any testimony to which this instruction might have applied and our search of the record has not revealed any such testimony. Where there is no testimony in the record to which a proposed instruction may apply, the refusal to give it does not constitute error.

With respect to the refusal of the trial court to grant his motion for a new trial, appellant merely states, "The affidavits filed by defendant were never answered by counteraffidavits or any showing at all. For each of the errors committed by the court upon the trial, the court should have granted a new trial." In *People* v. *Goodrich*, 41 Cal. App. 38, the court said at page 41 [181 Pac. 805, 807], "In view of such a general reference to the affidavits we would be justified in passing the matter by without investigation." We have examined these affidavits, however, and find nothing therein to indicate that the trial court abused its discretion in denying the motion. The alleged "errors committed by the court upon the trial" have already been considered.

We have discussed all of the assignments of error which are sufficiently presented in appellant's brief and some which are insufficiently presented therein. As above stated,

a reading of the entire record fails to disclose any error prejudicial to the rights of appellant.

The judgment and order denying the motion for new trial are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 15, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 27, 1933.