GERALD R. TOMPKINS AND WINNIE L.
TOMPKINS, Husband and Wife,

*Plaintiffs and Appellants,*

vs.

MIKE F. BYRTUS and KATHERINE BYRTUS,
Husband and Wife,

*Defendants and Respondents.*

(N. 2613; March 9th, 1954; 267 Pac. (2) 753).

538

For the plaintiffs and appellants the cause was submitted upon the brief of John F. Raper of Sheridan, Wyoming.

For the defendants and respondents the cause was submitted upon the brief of H. Glenn Kinsley and Robert E. Holstedt, both of Sheridan, Wyoming.

## OPINION

RINER, Justice.

This case is here by direct appeal proceedings from a judgment of the district court of Sheridan County. The action was brought by Gerald R. Tompkins and Winnie L. Tompkins, his wife, as plaintiffs, now appellants, against Mike F. Byrtus and Katherine Byrtus, his wife, as defendants who appear to be now regarded as defendants. Upon oral motion of counsel for appellants, Tompkins and wife, the court ordered the action dismissed against Mrs. Byrtus without prejudice. She did not testify as a witness in the case.

The action which plaintiffs brought in the district court aforesaid was one for damages which plaintiffs asserted they had suffered in the amount of $273.60 caused by water which flooded an apartment in plaintiffs' newly constructed tourist cabins in Sheridan in consequence of heavy rains which, through defendants' negligence, as plaintiffs assert, were allegedly diverted from their natural course of flow by the work and interference of the defendant, Byrtus. In plaintiffs' amended petition they in part alleged that: "The Defendants herein constructed a dam at the lower end of their driveway which extended to the Southeast corner of Plaintiffs' newly constructed building, and as a consequence thereof, the normal and natural flow of the water drainage from Coffeen Avenue was dammed up and diverted directly into the door of Plaintiffs' lower level cabin which had just been completed and newly furnished; That, as a consequence thereof, about six or

eight inches of water covered the entire floor of said cabin and the shower bathroom in connection therewith and remained on the floor of said cabin for a period of several hours before the agents and employee of the Plaintiffs herein discovered that said water had been diverted into said cabin; that the Plaintiffs herein at the time, were out of town and did not return until several hours after said damage had occurred." Plaintiffs also claimed exemplary damages in the sum of $500. The defendants' answer to plaintiffs' amended pleading was in part: "That the Plaintiffs have provided no drainage whatever for the protection of their said property from the water falling upon the higher elevations and flowing down from the streets and any damage sustained by the Plaintiffs from water drainage in time of rainstorm or otherwise from Coffeen Avenue, is due entirely to the Plaintiffs' own negligence and neglect in failing to provide necessary and proper drainage therefor and is in no wise due to any fault or wrongful acts of the Defendants." Thereafter plaintiffs replied to defendants' answer, in part, that "Plaintiffs specifically deny that the damage sued for and alleged in their amended Petition filed herein is in any manner due to their own negligence and neglect in failing to provide necessary and proper drainage therefor, as alleged in paragraph 3 of Defendants' Answer; that the damage complained of in their said amended Petition is due solely on account of the wrongful, unlawful and malicious acts of the Defendants by constructing the dam, as alleged in said Petition."

The trial of the issues submitted by the parties was to the court with a jury in attendance; the jury having been demanded by the plaintiffs. After that body had been instructed by the court and arguments by counsel for the parties had been had, the cause was submitted to the jury which returned a verdict in favor of the

defendants reading: "We, the Jury, being duly impanelled and sworn to try the issues of the above entitled action, do find generally for the Defendants and against the Plaintiffs and that the Plaintiffs take nothing by this action. Done this 19 day of December, A.D. 1952." The court thereupon entered a judgment upon this verdict which omitting preliminary statements and recitals was in terms as follows to wit: "IT IS NOW, THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiffs take nothing by this action and that Plaintiffs' Petition be dismissed at Plaintiffs' cost and that the Defendants have and recover judgment against the Plaintiffs and each of them for all of their costs herein taxed at $73.50." From this judgment the instant appeal was taken.

There were some sixteen alleged errors assigned by plaintiffs and appellants but those numbered 1 to 5 inclusive and 7 appear to have been abandoned and a statement to that effect appears in appellants' brief. The errors argued are those numbered 6 and 8 to 16 inclusive.

Preliminary to argument in appellants' brief on the alleged errors which were not waived appellants' claim that the rules which this court has announced in Chandler vs. Dugan, 70 Wyo. 439, 451, 251 P. (2d) 580, and in many previous decisions to the effect that:

"In the making of an analysis of the evidence in this case we must do so in the light of the approved appellate practice of the various courts throughout this country and in accord with what this court has said in that regard many, many times. That is to say: 'In the first place the credibility of the witnesses and the weight of their testimony are for the jury alone to determine.' Brown v. Butane Gas Co., 66 Wyo. 67, 205 P. (2d) 116. Then we must adhere to the rule set forth in Dulaney v. Jensen, 63 Wyo. 313, 181 P. (2d) 605,

where we: 'must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it.' "

are "extremely harsh." However, this criticism is not to be regarded as of much weight when we find that 4 C.J. § 2836, pp. 857, 858, states that:

"Where the evidence is conflicting, the appellate court, in determining whether the evidence is sufficient to support a verdict, must assume that the evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. And the rule is broadly stated in a great number of decisions representing nearly every court in America that the verdict or findings of a jury rendered on the trial of a cause will not be disturbed by a reviewing court where the evidence is conflicting."

This text is supported by many, many columns of citations. We also find 5 C.J.S. § 1648, p. 611, announcing in substance the same rule for the guidance of appellate courts on conflicting evidence as follows:

"It is a rule of general application that it is not the province of the appellate court to weigh the evidence where it is conflicting. The rule, as more broadly stated in most jurisdictions, is that the verdict or findings of a jury rendered on the trial of a cause will not be disturbed by a reviewing court * * *"

On pages 611 to 622 of the above cited text are set forth in note 16 et seq a wealth of cited authorities arranged in three columns to a page including many decisions from this Court. An examination of the record in the instant case discloses that the evidence before us therein was in fact sharply conflicting and the jury obviously chose to believe the defendant, Byrtus,

and his witnesses. This it was their province so to do if they saw fit; they were selected, of course, for that very purpose.

Complaint is made that Mrs. Winnie Tompkins was not allowed to point out on plaintiffs' exhibit No. 5, a photograph, where the alleged dam was constructed which caused the rain water to flow into plaintiffs' basement apartment cabins. There was no error in this ruling. The photograph had been identified by this very witness as correctly showing the Tompkins' apartment involved in this litigation on the day after the flooding of the apartment. Appellants state that "the vital point" in the case was "whether defendant, Mike Byrtus, placed it there." We fail to perceive how the location of the dam would throw any light on this "vital point" and appellants do not suggest any. Besides as above stated this witness had told the jury that this photograph correctly showed the Tompkins' apartment involved in this action. If appellants desired to inform the jury as to the location of the dam they could easily have elicited oral testimony on the point. Of course the photographs were not the only means available to plaintiffs to show the location of this dam. As a matter of fact the witness, Dale Tompkins, had already told the jury where the dam was located. It is evident that the testimony would have been merely repetitious.

It is urged that there was error in that the court permitted use of an interpreter in the taking of defendant Byrtus' testimony. When Byrtus was placed on the witness stand and interrogated we do not find that there was any objection made by the plaintiffs to the interpreter serving as such. The use of Poll as interpreter was a matter purely discretionary with the court. See 53 Am. Jur. § 29, p. 45, State v. Inich, 55 Mont. 1,

173 P. 230, 172 A.L.R. 930. In 70 C.J. § 666, p. 493 that text sustained by satisfactory authorities declares:

"A witness who does not understand the English language is properly examined through the medium of an interpreter; and the same is true of a witness who understands and speaks some English but not enough to enable him to testify intelligently or intelligibly. Although it has been held that the court is under a duty to appoint an interpreter where the necessity for one arises, it is ordinarily held that whether or not an interpreter should be appointed rests in the discretion of the trial court."

In People vs. Lacang, 213 Cal. 65, 1 P. (2d) 7, 8, the court said:

"It is equally clear that there was no abuse of discretion on the part of the court, in permitting witness Emoto to testify through an interpreter. His examination was commenced without an interpreter, and though he understood English to quite an extent, it soon became apparent that the calling of an interpreter would facilitate matters, as it later proved. This was a matter within the discretion of the trial court, and to our mind the record shows that here there was a wise use rather than an abuse of such discretion."

In the case at bar the alleged error because of this ruling is without merit.

How the testimony given as to the construction of the patio by the plaintiffs some weeks after the flooding had occurred had any material bearing on the "vital point" in the case we fail to see. It was merely an incidental matter which was mentioned in supplying a description of the premises involved. Why its mention should be regarded as prejudicial we do not understand and appellants' brief does not aid us in the matter. See Trepanier v. Standard Min. and Mill. Co., 58 Wyo. 29, 123 P. (2d) 378, 380, where it was pointed out that:

"We can only reverse a judgment for *prejudicial* error affecting the substantial rights of a party, something

the plaintiff in error or appealing litigant must establish in this court. Section 89-2002, W.R.S. 1931; Pardee v. Kuster, 15 Wyo. 368, 381, 382, 89 P. 572, 91 P. 836; Iowa State Savings Bank v. Henry, 22 Wyo. 189, 193, 136 P. 863; Stockgrowers' Bank of Wheatland v. Gray, 24 Wyo. 18, 154 P. 593; Ramsay v. Gottsche, 51 Wyo. 516, 525, 69 P. 2d 535." (Italics supplied.)

It is insisted that the judgment below is contrary to the evidence in the case. Nevertheless, tested by the rules declared by this court in Chandler vs. Dugan, supra, and many other cases from this jurisdiction we can see no merit in this contention.

After a careful examination of the record in this case we find no other course open to us other than to affirm the judgment below. An order to that effect should be entered.

*Affirmed.*

BLUME, C. J., and HARNSBERGER, J., concur.