In the Matter of the Wyoming State Committee for School District Organization Rejection of a Proposal for the Formation of Big Horn County School District No. 5.

CITIZENS OF OTTO and Burlington, Appellants (Petitioners),

v.

WYOMING STATE COMMITTEE FOR SCHOOL DISTRICT ORGANIZATION, Appellee (Respondent).

No. 84–316.

Supreme Court of Wyoming.

Aug. 26, 1985.

Henry F. Bailey, Jr., of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellants.

A.G. McClintock, Atty. Gen., and Rowena Heckert, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal seeks review of an administrative decision made by appellee Wyoming State Committee for School District Organization (hereinafter State Committee) denying a request made by appellants to create their own separate school district. Appellants are citizens of the towns of Otto and Burlington, Wyoming. They sought creation of a new school district separate from the present Big Horn County School District No. One, to which they belong. After public hearings, the proposal was initially approved by the District Boundary Board in Basin, Wyoming. The State Committee denied the request when it reviewed appellants' proposal. Appellants filed a petition for review in the district court. Both parties agreed to certify the case to this court for review.

Appellants raise the following issues:
"1. Whether the proposal for the creation of a new unified school district at Otto-Burlington, Wyoming, met the criteria established by the Wyoming School District Organization law and specifically whether the formation of such a district would be in the best interests of the students and citizens of Otto and Burlington, Wyoming. As a corollary question, whether the state committee abused its administrative discretion in rejecting petitioners' proposal for the formation of Big Horn County School District # 5 in the face of approval of the petition by the District Boundary Board for Big Horn County, Wyoming.
"2. Whether Wyoming Statute 21–5–133 (1977 Annot) setting a 500 pupil limit on the number of students required for the formation of a unified district from within the boundaries of an existing high school district was properly interpreted and applied in this case by the state committee."

When reviewing an administrative agency's decision on appeal, § 16–3–114, W.S.1977 (October 1982 Replacement) mandates that we review the entire record, or those portions cited to us, to determine if the agency's actions are supported by substantial evidence. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming*, Wyo., 662 P.2d 878 (1983). If it is determined that the agency's action is supported by substantial evidence, we are not at liberty to substitute our judgment for that of the agency. *Burlington Northern Railroad Company v. Public Service Commission of Wyoming*, Wyo., 698 P.2d 1135 (1985); and *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming*, Wyo., 627 P.2d 173 (1981). Substantial evidence has been defined "as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, Wyo., 549 P.2d 1161, 1178 (1976), quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). The burden of proving a lack of substantial evidence rests upon the party attacking the agency's decision. *Laramie River Conservation Council v. Industrial Siting Council*, Wyo., 588 P.2d 1241 (1978); and *Wyoming Bancorporation v. Bonham*, Wyo., 527 P.2d 432 (1974).

We will consider both of appellants' issues together. In their first issue appellants ask whether their proposal to create a new school district met the criteria established by law. As a corollary, they ask whether the State Committee abused its discretion in rejecting the proposal. Appellants' second issue is closely related to the first and asks whether the 500-pupil limit required by § 21–5–133, W.S.1977, was

properly applied by the State Committee in this case.

The formation of school districts is governed by the Wyoming School District Organization Law of 1969, §§ 21–5–101 through 21–5–137, W.S.1977.[1] The purpose of such act, among other things, is to create a more efficient use of public funds for education by improving and equalizing educational opportunity through proper planning, and generally enlarging and unifying school districts. One of the stated purposes of the act was to generally consolidate and enlarge many of the small, inefficient school districts in existence when the act was passed.

"The legislature of the state of Wyoming hereby declares that this chapter [§§ 21–5–101 to 21–5–137] is passed to provide machinery for the organization of the school districts in this state whereby school districts can be organized to: provide an improved and more equalized educational opportunity for all of the pupils in the state; provide a wiser and more efficient use of public funds for education by making it possible to reduce the disparity in per pupil valuation among school districts; to allow the initial planning for the organization of school districts under this chapter to be conducted on the local level; generally enlarge the school districts of the state; and eliminate the different types and kinds of school districts that presently exist and replace them with unified school districts defined in this chapter." Section 21–5–102, W.S.1977.

Appellants argue that their proposal adequately met the criteria to establish a new school district as provided by § 21–5–105, W.S.1977:

---

1. Although appellants claim they proposed their reorganization plan pursuant to § 21–6–105, W.S.1977, entitled, "Proposal to change boundaries, reorganize or combine districts," appellees point out that the procedure appellants followed was that found in § 21–5–133, W.S.1977, of the Wyoming School District Organization Law of 1969. The criteria under both acts is somewhat similar, with the ultimate decision resting with

the State Committee in either event. We note that the State Committee did base their decision in part on § 21–6–107, W.S.1977, which requires the State Committee to consider the effect of a proposal to change boundaries, etc., upon the purposes of the Wyoming School District Organization Law of 1969. We cannot see how the result would have differed under either law.

"(a) All districts organized after the effective date of this act [§§ 21–5–101 to 21–14–106] shall conform to the following criteria:

"(i) Unified school districts shall be organized as efficient administrative units considering primarily the education, convenience, and welfare of the children;

"(ii) The entire state shall be divided into unified school districts. Any county which has been delayed by previous statutory exceptions may have until April 15, 1977, to complete its organization;

"(iii) All territory of each unified school district shall be contiguous;

"(iv) All territory within a unified school district shall be divided into trustee residence areas. Each trustee residence area shall be contiguous. In establishing trustee residence areas, consideration shall be given to school population, general population, and ecology;

"(v) In developing plans of organization, the county committees shall consider a ratio of average daily membership to assessed valuation as nearly equalized as practicable among the unified districts in the various counties;

"(vi) Each plan of organization shall include provisions for educational opportunity and services as nearly equal as possible in all areas of each unified district."

However, when all the statutes are considered in pari materia, as they must be, it appears that the appellants' proposal did not meet all the applicable statutory requirements. Section 21–5–105 must also be construed in light of § 21–5–133, which further requires:

"Whenever at least one hundred (100) qualified electors of any area within an existing school district, which area includes both a high school and one (1) or more elementary schools with a total K–12 enrollment of more than five hundred (500) pupils, petition the district boundary board for creation of such area into a new unified school district, the district boundary board may, after holding a hearing thereon, form such area into a new unified school district."

The State Committee found that the criteria set forth in § 21–5–105, as well as the 500-pupil requirement in § 21–5–133, would not be met by appellants' proposal:

"1. The State Committee finds that the average daily membership of Big Horn County School District No. 1 for the 1983–1984 school year was 742.806 and that the projected enrollment of proposed Big Horn County School District No. 5 is 28.5% of the District 1 enrollment. Therefore the State Committee finds the projected enrollment of proposed District 5 to be approximately 212 pupils.

"2. The State Committee recognizes the legislative presumption implicit in the statutes relating to school district organization: that generally larger school districts will provide an improved and more equalized educational opportunity for all the pupils of the state and provide a wiser and more efficient use of the public funds spent on education. The explicit minimum size is over 500 pupils.

"3. The State Committee finds that formation of this school district with only 42% of the statutorily required minimum enrollment would create serious budgetary and staffing problems for the proposed district. To merely maintain the present services for the district, additional staff would be required beginning with a superintendent. To expand the program as proposed, a vocational agriculture teacher, special education teacher, teacher for the gifted and talented program, counselor, librarian and support staff would be required. The economy realized by sharing such staff among several schools in the district would not be available, and the educational programs of District 5 would probably suffer significantly."

The State Committee rejected appellants' proposal because it found the new district would not comport with the stated purposes of the Wyoming School District Or-

ganization Law in providing more efficient school districts. Specifically, the State Committee found that more staff would have to be hired to meet the special needs of students in the proposed new district. Furthermore, the State Committee found the proposed new district would not meet the 500-pupil requirement under § 21–5–133.

▇ Appellants argue that § 21–5–133 is inapplicable to the present case since the title of the statute, "Creation of new unified school districts from within boundaries of existing high school districts," means creation of a school district from within the boundaries of an existing high school district. When the statute was first created, the phrase "existing high school district" appeared in the first sentence. (1977 House Digest, p. 488.) However, the word "high" was subsequently removed from the enacted version of the statute indicating a legislative intent to broaden the application of the law. (1977 House Digest, p. 492; Ch. 181, § 1, S.L. of Wyoming, 1977.) Therefore, when the statute is construed with the other statutes of the same act, appellants' argument that such statute is inapplicable to the present case is unpersuasive.

Appellants further urge that their proposal set forth a proper assessed valuation for the new district. However, the State Committee found such valuation to be inadequate to support the necessary facilities of a new school:

"4. The State Committee finds that by gerrymandering the proposed district lines to include valuable oil producing properties very close to the town of Byron, the assessed valuation per pupil in the proposed district is $96,625 and for the remainder of District 1 is $98,538. It also finds that the total assessed valuation of the proposed district is $19,421,730, making the legal bonded indebtedness of $1,942,173 less any outstanding debts. This would be inadequate to provide the new K–12 facilities needed.

"5. The State Committee finds all territory of the proposed district is contiguous, as is the territory within the proposed trustee residence area. It is not certain whether consideration was given to school population, general population and ecology in establishing the trustee residence areas. It is also uncertain how formation of the proposed district would affect the educational opportunity and services of those students remaining in District 1 after loss of 28.5% of its enrollment and tax base."

After considering all evidence presented and holding a public hearing, the State Committee found the proposed school district should be rejected for the following reasons:

"1. It is a condition precedent for formation of a new unified school district by a district boundary board from within an existing school district that the proposed district have a total K–12 enrollment of more than 500 pupils. W.S. 21–5–133. Formation of a district with an enrollment of only approximately 212 pupils is outside the statutory authority of the District Boundary Board of Big Horn County. As a matter of law, the State Committee concludes it cannot approve such a proposal.

"2. Pursuant to W.S. 21–6–107, the State Committee concludes formation of Big Horn County School District No. 5 would seriously hamper efforts toward school district organization under the law. Creation of District 5 would undo part of what has been so arduously accomplished in Big Horn County and is directly contrary to the obvious intent of the legislature.

"3. The State Committee concludes formation of District 5 would not further the purposes of the School District Organization Law of 1969. Specifically it would not provide improved or more equalized educational opportunity for the affected pupils; it would not provide for a wiser or more efficient use of public funds for education, nor would it generally enlarge the school districts. It would instead have a serious adverse ef-

fect upon each of these objectives. W.S. 21–5–102.

"4. The State Committee concludes formation of District 5 would create two districts, each less efficient than the existing District 1 in terms of providing for the education, convenience and welfare of the students. W.S. 21–5–105

"5. The State Committee further concludes the territory of District 5 is contiguous, as are the proposed trustee residence areas, and that the resulting districts would have substantially equal assessed valuations per pupil. Lastly the State Committee is without sufficient information from which to conclude that the educational opportunity and services would or would not be as nearly equal as possible in all areas of each unified district. It does conclude that the educational opportunity and services of district 5 would suffer significantly upon division of District 1 and recognizes the same could be true for the remainder of District 1 but to a lesser degree.

"Therefore, the State Committee for School District Organization rejects the proposal of the Big Horn County District Boundary Board for formation of Big Horn County School District No. 5."

We find the decision of the State Committee supported by substantial evidence and we are obliged to uphold it. *Powell v. Board of Trustees of Crook County School District No. 1, Crook County,* Wyo., 550 P.2d 1112 (1976). The evidence supports the State Committee's conclusion that dividing the present district to create two separate districts would be a less efficient means of providing quality education in the area in question. This violates the criteria set forth in § 21–5–105. Furthermore, the proposed district does not meet the 500-pupil requirement in § 21–5–133. The State Committee further found the present school district would be adversely affected by the loss of some 200 students if appellants' proposal for a new school district were granted. We have held that statutory requirements must be met before a new school district is organized. *Johnson v. Schrader,* Wyo., 502 P.2d 371 (1972).

Finding, as we do, the State Committee's decision supported by substantial evidence and no showing of an abuse of discretion, the decision is affirmed.

Affirmed.