## COTTMAN v. LOCHNER
(No. 1554; May 28, 1929; 278 Pac. 71)

For the appellant there was a brief by *W. H. Patten* of Casper, Wyo.

For the plaintiff and respondent there was a brief by *M. L. Bishop, Jr.* and *Nichols & Stirrett* of Casper, and oral argument by *Mr. Bishop* and *Mr. Stirrett*.

380

RINER, Justice.

Fred W. Cottman instituted an action in the District Court of Natrona County against Caroline Lochner, to abate an alleged nuisance in the form of a fence across an asserted highway or stock trail, and for damages suffered because of its obstruction. From a judgment in favor of the plaintiff, the record in the case, by direct appeal, is brought here for review.

Summarized, the pleadings of the parties are to the following effect: Plaintiff's petition states that as a resident of Natrona county he has been engaged in the sheep industry since the year 1911, and with others has moved his herds and other property, as became necessary, to and from his ranches and the adjacent public range, to and from the town of Bishop, for shearing, shipping and dipping; that an act of Congress (43 U. S. C. A. 932, U. S. Rev. St., Sec. 2477), granted the public the right to establish highways over the unappropriated public domain, which grant, under procedure authorized by Chapter 184, W. C. S. 1920 and amendatory acts, the Board of County Commissioners of Natrona County accepted and established the highway in controversy known as the ''Seventeen Mile Well Bates'

Hole Stock Trail.'' After describing the course of the highway by metes and bounds and detailing the acts of the board of county commissioners looking to the creation of this highway, which were begun April 5, 1916, it is alleged that the road was finally established March 6, 1918. It is also stated that the plaintiff and the general public had for a long time used this highway prior to its official establishment and also thereafter, until it was fenced by the defendant, said road being indispensible to the plaintiff and to others in the conduct of their several businesses; that defendant recognized the existence of this trail for many years before she put up the fence of which complaint is made; that said fence was without right erected by her across the highway in the fall of 1925, the description of the fence and the portions of the highway obstructed by it being specifically set forth; that the defendant continues to maintain the fence in derogation of the plaintiff's right to use the road; that on June 13, 1926, when plaintiff was conducting his herds of sheep from the aforesaid town of Bishop over the highway, his and their passage was hindered and delayed for forty-eight hours by said fence, which the defendant, upon demand, refused to remove, by reason of which plaintiff and the sheep were injured and expense entailed in the sum of $500. Judgment for damages in this amount was asked, and it was prayed that the fence be removed and the defendant restrained from further obstructing the highway.

The answer of the defendant, after setting out a general demurrer to plaintiff's petition and charging that there is a defect in parties in that the action could only be brought by Natrona County or its representatives, entered a general denial of the allegations of plaintiff's pleading, admitting, however, that the defendant is the owner of Section 13, Township 34, Range 81, West of the Sixth Principal Meridian, and that the section is fenced. The answer also specifically denies that any road or highway was ever established in any way over or across said land or any part there-

of. The prayer of the answer was that the action be dismissed.

Trial to the court resulted in the judgment in favor of the plaintiff already mentioned, wherein damages as claimed were awarded, the defendant ordered to remove the obstructing fence, and the costs of the proceedings were taxed against her.

The facts of the case, in so far as they are essential to an understanding of the points urged to obtain a reversal of the judgment, will be mentioned as these matters are considered.

It is first insisted that the Board of County Commissioners of Natrona County obtained no jurisdiction to lay out the highway involved here across Section 13 above mentioned, to which section the defendant holds a patent from the National Government, for the reason that the board failed to give her notice, or sufficient notice, of its intention to establish the road so that she might be heard concerning the matter.

The proof is, that the proceedings to establish a road were commenced by petition presented to the aforesaid board on April 5, 1916. A viewer was appointed and his report favorable to the establishment of the road was thereafter made and filed. May 3, 1916, the board ordered the county surveyor to make a survey of the proposed highway and to file with the county clerk of Natrona County, plats and notes of the survey. This work appears to have been done in July and August, 1917. Thereafter on October 2, 1917, the defendant took up her residence upon Section 13 aforesaid, under a homestead filing previously made sometime during that year, and she continued to live there until patent was issued to her for the land on August 1, 1921. The survey of the highway ran through the north line of the section about a quarter of a mile from its northeast corner, thence in a southwesterly direction through the subdivision to a point on the west line thereof about one-half mile north from the section's southwest corner, with the

result that a triangular piece of ground was left in its northwesterly corner.

November 8, 1917, the Board of County Commissioners of Natrona County ordered the clerk of that county to cause to be published in the official paper a notice requiring all persons who might claim damages because of the creation of the stock trail, or have objection thereto, to file their claims or objections in the clerk's office on or before noon of the 22nd day of December, 1917, or the road and trail would be established without reference to such claims. In the proceedings of the commissioners, the intended highway of 500 feet in width was fully described by metes and bounds. A notice, duly conforming to the board's order and containing a complete description of the road, was published for three successive weeks in the Casper Record, a newspaper of general circulation, published weekly at Casper, Wyoming, the first publication of the notice being December 4, 1917, and the last on December 18, 1917. It is not alleged or proven that any copies of this notice were ever sent by registered mail to anyone. Pursuant to the notice thus published, one of the owners of lands affected by the proposed highway presented his claim for damages, which was duly considered and disposed of by the board. However, neither the defendant nor anyone else seems to have appeared in the matter.

Sometime during the year 1919, according to the testimony of Herbert L. Kennedy, who was then County Surveyor of Natrona County, Adam Lochner, the son of defendant and who acted as her agent and business manager concerning the highway matters around which this controversy centers, came to Kennedy's office in Casper and asked about the road through his mother's section, desiring to know how wide the right of way was and saying that he wanted a fence on each side. Kennedy told him, in substance, that it was a 500 foot trail, and that if he measured out 250 feet from the monuments that marked the center line of the trail, he would have the location for his fence.

The following year the county surveyor, being directed to do so by the board of county commissioners, checked up the location of the fence which had then been placed by Lochner on said Section 13 and found it to be within three feet of the southeasterly line of the road, and accordingly advised the board that the fence was "all right." This conversation with Kennedy was denied by Lochner, the latter asserting that the reason he omitted to fence the northwest corner of the section at first was because "I did not know where that corner was; I was short of fence posts and I cut across that corner." Lochner also said that he did not then know where the south line of the road was, and that if he got the fence within a few feet of that line, "it was by accident." According to the plaintiff's testimony, the defendant's obstructing fences were thereafter placed across the road sometime between the fall of 1925 and the spring of 1926.

Section 2997, W. C. S. 1920, provides, omitting the outlined form of notice:

"Notice shall be published of the proposed location or alteration of any road for three successive weeks in three successive issues of some official newspaper published in the county, if any such there be, and if no newspaper be published therein, such notice shall be posted in at least three public places along the line of said proposed or altered road, which notice may be in the following form. * * *

"The county commissioners shall cause a copy of the above notice to be mailed by registry mail to all persons owning lands or claiming any interest in any lands over or across which said road is proposed to be located or altered. The publication and posting of such notice shall be a legal and sufficient notice to all persons owning lands or claiming any interest in lands over which the proposed road is to be located or altered."

It is contended that as it does not appear that a copy of the published notice was sent by registered mail to the defendant as directed by this statute, the Board of County Commissioners of Natrona County obtained no jurisdiction

to establish the road as against the defendant. It is to be observed that before the legislative session of 1913, the law quoted above made no provision whatsoever for mailing a notice to anyone claiming an interest in land over which a proposed road was to be located. Full compliance with a statute which requires publication or posting of the notices of the intended location of a highway only, has been held, by the overwhelming weight of authority, to confer jurisdiction to act upon the body vested with authority to lay out the road. In Wilson v. Hathaway, 42 Iowa 173, Chief Justice Miller remarked in the course of his opinion:

"We have no doubt of the power of the legislature to provide for the condemnation of the right of way for public highways upon notice by publication in newspapers or by notices posted. The proceeding is in the nature of proceedings *in rem* in which the court acquires jurisdiction of the property which is the subject of the adjudication. See Melhop & Kingman v. Doane & Co., 31 Iowa 397 (7 Am. Rep. 147), and cases cited."

In Huling v. Kaw Valley Railway and Improvement Co., 130 U. S. 559, 9 S. Ct. 603, 32 L. Ed. 1045, we find this language used:

"Of course, the statute goes upon the presumption that, since all the parties cannot be served personally with such notice, the publication which is designed to meet the eyes of everybody, is to stand for such notice. The publication itself is sufficient if it had been in the form of a personal service upon the party himself within the county. Nor have we any doubt that this form of warning owners of property to appear and defend their interest, where it is subject to demands for public use when authorized by statute, is sufficient to subject the property to the action of the tribunals appointed by proper authority to determine those matters."

The later case of Wight v. Davidson, 181 U. S. 371, 21 S. Ct. 616, 45 L. Ed. 900, contains the following paragraph pertinent to the point we are considering:

"It is also established by those authorities that, in proceedings of this nature, notice by publication is sufficient; and it accordingly follows that the order of publication, in the newspapers named, by the Supreme Court of the District, gave due notice of the filing of the petition and an opportunity to all persons interested to show cause, if any they had, why the prayer of the petition should not be granted. Such notice also must be held to have operated as a notice to all concerned of the pending appointment of a jury, and that proceedings under the act of Congress would subsequently be had. This gave an opportunity for interested parties to attend the meetings of the jury, to adduce evidence, and be heard by counsel. The return of the marshal shows that some, at least, of the property owners appeared before the jury, produced witnesses, and were heard by counsel. If the appellees did not avail themselves of these opportunities, the court and jury, proceeding according to law, were not to blame."

See also Nichols on Eminent Domain, Sec. 299; Smith v. Cochrane, 9 Wash. 85, 37 Pac. 311, 494; 20 C. J. 938, Sec. 349, and cases cited in note; 29 C. J. 413, Sec. 62; I Elliott on Roads and Streets, 421, Sec. 364.

To the same effect is the case of Davies v. City of Los Angeles, 86 Cal. 37, 24 Pac. 771, where it is said:

"Is notice by posting and publication sufficient as against the land to be assessed, or must personal notice be given? As to this question, it seems to us there is no room for controversy. The legislature has the undoubted right to say what notice shall be given in this class of cases, so long as the notice required to be given is reasonable, and the proceeding is not arbitrary, oppressive, or unjust, and the notice provided for need not be a personal one. Lent v. Tillson, 72 Cal. 404, 413, 14 Pac. Rep. 71; Scott v. City of Toledo, 36 Fed. Rep. 385, 396 (1 L. R. A. 688)."

It will be perceived that our statute dealing with this matter of notice in cases of the kind under consideration, in terms declares, that the publication of the notice "shall be a legal and sufficient notice to all persons owning lands

or claiming any interest in lands over which the proposed road is to be located.'' Nothing is said concerning that provision of the law requiring the forwarding a copy of the published notice by registered mail to the persons interested. It is plain, as we have seen, that the legislature could declare, as it has, that publication of the notice would be a sufficient warning to those interested to appear and be heard concerning claims and objections they might desire to present, and that a notice so given would be effective to confer jurisdiction upon the board of county commissioners to act in such matter. In view of the peculiar phraseology of the statute, the requirement that a copy of the notice should be sent by registered mail to owners of lands or those claiming an interest in lands over which a highway is proposed to be laid out is, in our judgment, directory merely. The requirement should be followed in each case so far as possible, but failure to do so cannot be held to vitiate the entire proceedings in establishing the road.

It is significant that no claim is made that the defendant was not cognizant of the location of the highway. The monuments placed by the county surveyor, when he ran the line of the road, were upon the ground when the defendant took up her residence upon the land included within her homestead filing. Her son and business manager who built the objectionable fences, according to the sworn testimony of the then county surveyor, was thereafter personally told of the location of the highway, and at first located his mother's fencing to conform thereto. He went to the surveyor's office to obtain this information, which would itself indicate that he knew a road had been established which affected his mother's land. While the son's denial of his visit to the county surveyor concerning the matter is in the record, yet his explanation why the fence was at first so closely located to the southeasterly line of the highway as surveyed, is not altogether satisfactory, as we view the testimony, and this apparently was the view of the trial court.

The attack made by the defendant herein upon these highway proceedings is undoubtedly collateral in character (North Laramie Land Co. v. Hoffman, 30 Wyo. 238, 219 Pac. 56; Edwards v. City of Cheyenne, 19 Wyo. 110, 114 Pac. 677, 122 Pac. 900), and hence it may also well be said that there would come into operation here the principle mentioned in 13 R. C. L. 56, Sec. 447, where it is pointed out that:

"Where the body to which the statute intrusts the matter orders the opening of the way, and in doing so necessarily passes on the facts essential to its jurisdiction, every presumption is in favor of its jurisdiction and the validity of its proceedings on collateral attack. So it has been held that it will be presumed on such an attack that the required notice was given, especially in the absence of any showing to the contrary."

A careful examination of the authorities cited by counsel concerning this branch of the case, shows that they deal with instances where either the law requiring notice in the course of highway proceedings was itself defective or no notice at all was actually given. They do not at all refer to a situation such as is now before us.

It is next insisted that unless the plaintiff alleges and proves that he has sustained a special and peculiar injury different from the public in general, he cannot maintain an action for damages, and it is said that that is the situation presented now.

We have already outlined the plaintiff's pleading, and so far as his proof on the matter of damages is concerned, it fully established that he had no other way than over the highway in dispute to go from his home ranch at the head of Salt Creek to his summer range in the mountains; that he was held up by defendant's fences for some forty-eight hours with two bands of sheep totalling about 4,000 head; that there was a heavy rain falling at the time and on account of exposure to these conditions, the sheep suffered a shrinkage of 25 cents a head; that he lost five head of sheep,

each of the value of $6; and that his employees lost two days time, for which he was compelled to pay.

Lord Coke, in Vol. 1, p. 56, note (a), of his Institutes of the Laws of England, declares that:

"For if the way be a common way, if any man be disturbed to goe that way, or if a ditch be made overthwart the way so as he cannot goe, yet shall he not have an action upon his case; and this the law provided for avoiding of multiplicity of suites, for if any one man might have an action, all men might have the like. But the law for this common nusance hath provided an apt remedy, and that is by presentment in the leete or in the torne, unless any man hath a particular damage; as if he and his horse fall into the ditch, whereby he received hurt and losse, there for this special damage, which is not common to others, he shall have an action upon his case."

This doctrine has since been broadened and the trend of the cases has been such as to cover any special or particular damages, apart from those which are incident to and suffered by all the public, whether such damage is direct or only consequential. The principal difficulty undoubtedly experienced by the courts is the determination as to what constitutes special or particular damage. This appears to be a matter which depends, in large measure, upon the facts of each particular case.

In the old English case of Mayell v. Saltmarsh, 1 Keble 847, the plaintiff brought his action against the defendant for erecting posts in a highway through which the plaintiff passed to and from his close and alleged that his corn was corrupted and spoiled in consequence of the obstruction; and it was held that that was a sufficient special damage to support the plaintiff's action. Similarly in Rose v. Miles, 4 Mau. & Sel. 101, the defendant obstructed a public navigable creek by mooring his barge across the same, and preventing the plaintiff from navigating his loaded barge, on account of which he was forced to carry his goods over land at heavy expense. Concerning this situation Lord Ellenborough said:

"This is something more substantially injurious to this person than to the public at large, who might only have it in contemplation to use it, and he has been impeded in his progress by the defendants wrongfully mooring their barge across, and has been compelled to unload, and to carry his goods over land, by which he has incurred expence, and that expence caused by the act of the defendants: If a man's time or his money are of any value, it seems to me that this plaintiff has shewn a particular damage."

Mr. Freeman, in his note to the case of Stetson v. Faxon, 31 Am. Dec. 123, 19 Pick. (Mass.) 147, a decision cited by defendant, remarks:

"To have suffered in a greater degree than the public is to have received special and peculiar damage according to the best-considered and greatest number of the cases."

Joyce on the Law of Nuisances, Sec. 219, says:

"To constitute special damage there must be an invasion or violation of some private right of the individual, as distinguished from the public right which a party has of using a public highway in common with the rest of the public."

Wood's Law of Nuisances (2d Ed.), 754, Sec. 690, says that:

"Injury to one's private property or to his health or comfort is special."

Enos v. Hamilton, 27 Wis. 256, was a case where the declaration alleged that the plaintiff was the proprietor of a tannery on a certain navigable river, and that the defendant, for some six weeks, obstructed the river with logs so that he was unable to get his bark from a point up the river; that thereby he was delayed in the manufacture of leather and that during that period the price of leather fell a specified amount and he was compelled to pay his workmen and keep them with nothing to do. The court below

rendered a judgment of nonsuit, but this was held error, and the case reversed, it being decided that these facts disclosed a sufficient special injury to enable plaintiff to maintain a private action, although the nuisance was a public one.

In Wakeman v. Wilbur, 147 N. Y. 657, 42 N. E. 341, the following language, quoted from the opinion, gives in brief the facts of the case and the law as applied thereto by the court:

"The referee found from evidence entirely sufficient that the plaintiff was obliged to use the road in the winter for the purpose of drawing logs, but on account of the obstruction he was for several days compelled to take another and much longer route, to his pecuniary damage; that at other times he was obliged to clear the road from the drifts of snow that had accumulated in consequence of the fence, which required time and labor, and that in some other respects he was put to expense in the use of the road for his lawful business, by reason of the defendants' acts. The total damage peculiar to the plaintiff the referee found upon the proofs to be $35. These findings bring the case within the principle which permits a private person to maintain an action to abate a public nuisance, and to recover the damages which he sustained and which were special and peculiar to himself, growing out of the necessity on his part to use the road at the time of the obstruction more frequently, perhaps, than his neighbors. The obstruction was, no doubt, an offense against the public, but it was none the less, in a special and peculiar sense, an injury to the plaintiff."

So in Milarkey v. Foster, 6 Ore. 378, 25 Am. Rep. 531, language of like purport was used to this effect:

"The obstruction of a public highway is a public nuisance, and it is well settled 'that no person can maintain an action for a common nuisance, unless he has suffered therefrom some special and peculiar damages, other and greater than those sustained by the public generally.' Those who have no occasion of business or pleasure to pass over a road thus obstructed, and who have not attempted it, cannot

392

maintain an action for the obstruction thereof. Brown v. Watson, 47 Me. 161. (74 Am. Dec. 482).

"By an examination of the complaint in this case, we find that it is alleged that respondent not only had an occasion of business to travel over the road, but did actually attempt to do so with his teams and wagons in order to deliver the freights with which they were loaded, and that by means of the obstruction complained of by respondent, he was prevented and delayed from doing so for a period of five and a half days, to his great damage, etc. These allegations we think are sufficient to show that respondent suffered special and peculiar damages other than those sustained by the public in general, who had no special occasion to travel over the road."

An elaborate list of cases upon the particular point under consideration might be cited and examined, for they are abundant, but we do not deem it necessary to pursue the matter further. The authorities cited make it clear, as we see it, that plaintiff may maintain an action to recoup his damages under the circumstances disclosed by this record. There is no doubt that his property was injured and he put to expense and loss on account of the highway being wrongfully obstructed by defendant's fence. This constitutes a special and particular injury and damage to him which is not common to the public generally who may use the road. Plaintiff both pleaded and proved these facts and he is entitled, we think, to succeed in his action.

Finding no error which would authorize us to interefere with the judgment, it is accordingly affirmed.

*Affirmed.*

Blume, C. J. and Kimball, J., concur.