Mary GRAMS and Leroy Grams,
Appellants (Petitioners),

v.

ENVIRONMENTAL QUALITY COUN-
CIL of the State of Wyoming and Amax
Coal Company, Appellees (Respon-
dents).

No. 86–122.

Supreme Court of Wyoming.

Dec. 19, 1986.

Randall T. Cox of Omohundro and Palmerlee, Buffalo, for appellants (petitioners).

A.G. McClintock, Atty. Gen., Steve R. Shanahan, Sr. Asst. Atty. Gen., Phil Tabor, Asst. Atty. Gen., Michael N. Patchen, Legal Intern, Cheyenne, for appellee (respondent) Environmental Quality Council.

Edward W. Harris and Marilyn S. Kite of Holland & Hart, Cheyenne, and Steven R. Youngbauer, Gillette, for appellee (respondent) Amax Coal Co.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

This is an appeal from the decision of appellee Environmental Quality Council (EQC) granting a permit to mine coal to appellee AMAX Coal Company (AMAX). Appellants Mary Grams and Leroy Grams objected to the permit application filed by AMAX. After a hearing was held, the EQC's order issued directing that a mining permit issue to AMAX.

Appellants raise the following issues on appeal:

I.

"(a) Whether the Environmental Quality Council's orders, findings and conclusions were adopted without observance of procedure required by law.

"(b) Whether the conduct of the Environmental Quality Council, its hearing examiner and the Department of Environmental Quality in the proceedings subject to review herein were arbitrary, capricious or deprived the appellants of their constitutional and statutory rights of due process of law."

II.

"(a) Whether the application of AMAX Coal company for a permit to surface mine coal was complete as of May 21, 1985, and therefore whether the Environmental Quality Council had statutory authority to direct the Department of Environmental Quality to issue a permit.

"(b) Whether the Environmental Quality Council's ultimate findings of fact are unsupported by substantial evidence and are not accompanied by findings of underlying facts and thus should be set aside."

We will affirm.

Appellants own land adjacent to the AMAX coal mining area. They are concerned that the mining operations will cause damage to their land. Specifically, appellants are concerned that the mining operations will have an adverse affect upon the wildlife, alluvial valley floors, and the lateral and subjacent support. Appellants

also raised concern regarding toxic materials, proper hydrologic balance outside the area, and the blasting operations.

AMAX applied to the Wyoming Department of Environmental Quality, Land Quality Division (LQD) for a permit to mine coal pursuant to § 35–11–406, W.S.1977 (1986 Cum.Supp.). See, generally, Kite, "The Surface Mining Control and Reclamation Act of 1977: An Overview of Reclamation Requirements and Implementation," XIII Land & Water L.Rev. 703 (1978). This mine is presently active and this application is necessary to continue its operation. The LQD determined that the application was complete in January, 1984, and notice of the filing was published on February 8 and 15, 1984. On May 21, 1985, the LQD advised AMAX that the application was complete and suitable for publication under § 35–11–406(h). Thereafter, AMAX published notice of the LQD's determination of completeness in the Gillette News-Record on June 21, June 25, July 2 and July 9, 1985. Additionally, appellant Leroy Grams was served notice of the application by certified mail on June 29, 1985, and appellant Mary Grams was served notice by certified mail on July 5, 1985. On August 5, 1985, the appellants submitted their objections.

As a result of appellant's objections, the EQC was required to hold a hearing within twenty days from the final date of filing objections under § 35–11–406(k), unless the parties stipulate to a continuance. AMAX would not stipulate to a continuance, so the EQC was required to hold a hearing on or before August 28, 1985.

A prehearing conference was held on August 27, 1985. The next day, August 28, 1985, a hearing was held. At the hearing, appellant Leroy Grams appeared pro se. Appellant Mary Grams did not appear, nor was she represented by counsel. Appellant Leroy Grams cross-examined the witnesses for AMAX, made a sworn statement and presented evidence as to what his mother, appellant Mary Grams, would have said in support of appellant Leroy Grams' protest.

On November 19, 1985, the EQC entered its order directing the LQD to issue a min-

ing permit to AMAX. On December 17, 1985, appellants filed a petition for review in the Campbell County District Court. The petition for review was certified to this court on May 7, 1986.

We begin by setting forth our applicable standard of review. In *Citizens of Otto v. Wyoming State Committee for School District Organization*, Wyo., 705 P.2d 831, 833 (1985), we stated:

"When reviewing an administrative agency's decision on appeal, § 16–3–114, W.S. 1977 (October 1982 Replacement) mandates that we review the entire record, or those portions cited to us, to determine if the agency's actions are supported by substantial evidence. *Mountain Fuel Supply Company v. Public Service Commission of Wyoming*, Wyo., 662 P.2d 878 (1983). If it is determined that the agency's action is supported by substantial evidence, we are not at liberty to substitute our judgment for that of the agency. *Burlington Northern Railroad Company v. Public Service Commission of Wyoming*, Wyo., 698 P.2d 1135 (1985); and *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming*, Wyo., 627 P.2d 173 (1981). Substantial evidence has been defined 'as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Board of Trustees, Laramie County School District No. 1 v. Spiegel*, Wyo., 549 P.2d 1161, 1178 (1976), quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). The burden of proving a lack of substantial evidence rests upon the party attacking the agency's decision. *Laramie River Conservation Council v. Industrial Siting Council*, Wyo., 588 P.2d 1241 (1978); and *Wyoming Bancorporation v. Bonham*, Wyo., 527 P.2d 432 (1974)."

I.

A. Adequate Notice.

Appellants ask whether proper procedure was followed by the EQC and AMAX in

this case. Appellants claim that there was insufficient notice given pursuant to statutory law.

Notice of filing the application is first required after the application is determined to be complete under § 35–11–406(g). This section then requires that " * * * the applicant shall publish a notice of the filing of the application once each week for two (2) consecutive weeks * * * " in a local newspaper. This notice was published by AMAX in the Gillette News-Record on February 8 and 15, 1984. It should be noted that appellants regularly received this newspaper at all times relevant hereto.

■ After the application has been reviewed, a determination is made whether the application is suitable for publication. If the application is not found to be deficient or is not denied, then it is deemed suitable for publication. § 35–11–406(h). At this point, the applicant (AMAX) must then publish notice of the application in a local newspaper pursuant to § 35–11–406(j), which provides:

"The applicant shall cause notice of the application to be published in a newspaper of general circulation in the locality of the proposed mining site once a week for four (4) consecutive weeks commencing within fifteen (15) days after being notified by the administrator. The notice shall contain information regarding the identity of the applicant, the location of the proposed operation, the proposed dates of commencement and completion of the operation, the proposed future use of the affected land, the location at which information about the application may be obtained, and the location and final date for filing objections to the application. The applicant shall mail a copy of the notice within five (5) days after first publication to all owners of record of the surface and mineral rights of the land within the permit area, to the owners of record of the surface rights of immediately adjacent lands and to any other persons with one-half (½) mile having a valid legal estate of record. Proof

of notice and mailing shall be attached to and become part of the application."

In this case, AMAX received notification from the administrator that the application was suitable for publication on May 23, 1985. The first notice was published by AMAX on June 21, 1985, obviously longer than fifteen days after receiving notice of suitability for publication. The notices were published in the Gillette newspaper on June 21, June 25, July 2 and July 9, 1985.

We have stated that the main consideration is the gravity of the error, not its mere occurrence, and that the onus is placed upon the appellant to show how the error was prejudicial. *State Highway Commission of Wyoming v. Joe Miller Land Company*, Wyo., 467 P.2d 450, (1970). Furthermore, we have recognized that an error must be prejudicial and affect the substantial rights of the appellant to warrant reversal. *ABC Builders, Inc. v. Phillips*, Wyo., 632 P.2d 925 (1981); and *Tomkins v. Byrtus*, 72 Wyo. 537, 267 P.2d 753 (1954).

Here, appellants have not shown how AMAX's failure to commence publication within fifteen days substantially prejudiced them. Any interested party has thirty days after the last publication of the notice in which to file written objections. § 35–11–406(k). Therefore, appellants were given more time in which to file their objections, and we think the error was harmless. Rule 61, Wyoming Rules of Civil Procedure; and Rule 7.04, Wyoming Rules of Appellate Procedure. We will not reverse an agency's action based on harmless error. *Gore v. John*, 61 Wyo. 246, 157 P.2d 552 (1945).

■ Appellants also complain that only eighteen days elapsed between the first and last publication of the notice. As cited above, § 35–11–406(j) requires that the notice be published " * * * once a week for four (4) consecutive weeks * * * ."

In the case of *Hay v. Hudson*, 31 Wyo. 150, 165, 224 P. 840 (1924), this court held that a statute requiring notice of a foreclosure sale to be published at least once a

week for three consecutive weeks prescribed only the number of publications, not the duration of the notice. Accord, *Home Owners' Loan Corporation v. Diefenderfer*, 57 Wyo. 13, 112 P.2d 563 (1941).

Amax published the notice of their application on June 21, June 25, July 2 and July 9, 1985. This fulfilled the statutory requirement of publishing the notice once a week for four consecutive weeks under § 35–11–406(j).

■ It should also be noted that AMAX did mail a copy of the notice to both appellants on June 25, 1985, within the five days after first publication under § 35–11–406(j) quoted above. While it is true that appellant Leroy Grams received his notice on June 29, 1985, and appellant Mary Grams received her notice on July 5, 1985, both notices were initially mailed within five days of the first publication (June 21, 1985).

In the case of Employment Security Commission of *Wyoming v. Young*, Wyo., 713 P.2d 198, (1986), this court recently recognized that there is a rebuttable presumption that delivery of mail occurs when it is properly addressed, stamped and mailed. Such presumption is based upon the probability that the postal service properly performs its duty in sending and delivering the mail.

In this case, the notices were sent to appellant via certified mail within the proper time period. Appellant Leroy Grams received his notice five days after it was sent. The first notice sent to appellant Mary Grams was returned as non-deliverable. When her correct address was discovered, AMAX immediately sent a second notice to appellant Mary Grams, which she received on July 5, 1985. From this date, appellants still had some thirty-four days in which to file written objections. And appellants were able to timely file such objections.

Furthermore, the record reflects that appellants were aware of their right to protest as early as April, 1985, well before they received official notice. And, as noted earlier, appellants regularly received the Gillette News-Record at all times pertinent to this case.

Therefore, we are unable to see, nor have appellants shown, how any such error substantially prejudiced them.

B. Motion for Continuance.

■ Appellants also complain that the hearing in this matter was held too soon and that the EQC's denial of their motions for continuance constituted an abuse of discretion. However, it is noted § 35–11–406(k) provides that: " * * * An informed conference or a public hearing shall be held within twenty (20) days after the final date of filing objections unless a different period is stipulated to by the parties. * * * " As noted above, counsel for AMAX declined to stipulate to a continuance since counsel determined such was not in the best interests of his client. The final date for filing objections was August 8, 1985. Therefore, the final day for holding the hearing was on August 28, 1985, the day the hearing was held. We cannot find an abuse of discretion since the EQC complied with the time specified in § 35–11–406(k).

C. Right of Discovery.

■ Appellants complain that their right of discovery was denied. The crux of this argument is not completely clear, but apparently appellants made a discovery motion on August 26, 1985, two days before the scheduled hearing. Appellants do not specify on appeal exactly what they wished to discover or how the failure to so discover adversely affected them. We need not consider issues on appeal which are not supported by cogent argument or persuasive authority. *Heier v. State*, Wyo., 727 P.2d 707 (1986).

However, we have previously decided in this opinion that appellants did have adequate notice of the hearing and their failure to conduct proper discovery until two days before the hearing cannot be charged to anyone's account other than their own.

**D. Revision of the Permit Application.**

■ After AMAX's application was deemed suitable for publication on May 21, 1985, pursuant to § 35–11–406(h), the application was revised and minor omissions corrected. Appellants contend that this constituted improper ex parte communication between AMAX and the LQD.

Once an application is deemed suitable for publication, notice is then published to commence formal public participation. § 35–11–406(h). A deficient application is defined as one having " * * * an omission or lack of sufficient information serious enough *to preclude correction or compliance by stipulation* in the approved permit to be issued * * *." (Emphasis added.) § 35–11–103(e)(xxiv). Conversely, an application that is not deficient is one that *is* correctable by stipulation. That is what occurred here. The LQD determined that the application was suitable for publication because any omissions were correctable by stipulation.

It should also be noted that the subsequent correspondence between AMAX and the LQD raised no new issues. The purpose of this correspondence was to supply any omissions or make any necessary corrections to make the application more complete.

**E. Other Concerns.**

Appellants raise a number of other alleged procedural errors which we will briefly address.

■ Appellants contend that the entire EQC did not consider and decide the matter since they received the council's Findings of Fact, Conclusions of Law signed by the hearing examiner, not the chairman of the EQC.

The hearing in this case was presided over by Edgar Langrand, a member of the EQC. And contrary to appellant's assertion, the record does indicate the full council considered the matter. The EQC's final order states:

"The application of Amax Coal Company for a surface coal mining permit and the objections thereto of LeRoy Grams and Mary H. Grams *were considered by the Environmental Quality Council at a public meeting* in Jackson, Wyoming, on September 30, 1985, following an evidentiary hearing held in Cheyenne, Wyoming, on August 28, 1985. Amax Coal Company appeared and was represented by Steven R. Youngbauer of Amax Coal Company. Mary H. Grams did not appear and was not represented at the hearing, and LeRoy Grams appeared pro se. The Land Quality Division of the Department of Environmental Quality appeared and was represented by Weldon S. Caldbeck, an Assistant Attorney General. *Having considered the evidence presented at the hearing and the arguments of counsel, the Environmental Quality Council hereby finds and concludes* as follows." (Emphasis added.)

Appellants have not shown any wrongdoing by the agency, as is their burden. *Wyoming Bancorporation v. Bonham,* Wyo., 527 P.2d 432 (1974).

Appellants also complain that the burden of proof was improperly placed upon them instead of the applicant AMAX. It is true that the burden of proof rests upon the applicant to show that the application is in compliance with applicable law. § 35–11–406(n). The record reveals that AMAX recognized this in its prehearing memorandum, as did the EQC when it stated in its final conclusion of law that "AMAX Coal Company has met its burden of proof demonstrating that the Eagle Butte Mine is in compliance with W.S. § 35–11–406(n), and all other applicable state laws."

Appellants also contend that it was improper for the Department of Environmental Quality not to send them a copy of the mining permit ultimately granted to AMAX. Such argument is without merit. Appellants did receive a copy of the EQC's decision directing the LQD to grant a permit to AMAX. The fact that appellants did not receive a copy of the actual permit is inconsequential.

## II.

Having determined that there were no procedural errors constituting prejudice to the appellants, we now turn our attention to a review of the EQC's decision. When reviewing an agency decision, § 16–3–114(c), W.S.1977, October 1982 Replacement, directs as follows:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

Appellants contend that AMAX's application was incomplete as of May 21, 1985, and that such determination of completeness constituted error. The contention is not well taken. Appellants were mistaken when they claim the application was complete as of May 21, 1985. The LQD determined that the application was complete pursuant to § 35–11–406(e) on January 30, 1984. This section provides:

"The administrator shall notify the applicant within sixty (60) days of submission of the application whether or not it is complete. If the administrator deems the application incomplete, he shall so advise and state in writing to the applicant the information required. All items not specified as incomplete at the end of the first sixty (60) day period shall be deemed complete for the purpose of this subsection."

The LQD then engaged in further review of the application. On May 21, 1985, the LQD determined that the application was suitable for publication under § 35–11–406(h) which provides in part:

"The administrator shall review the application and unless the applicant requests a delay advise the applicant in writing within one hundred fifty (150) days from the date of determining the application is complete, that it is suitable for publication under subsection (j) of this section, that the application is deficient or that the application is denied. * * *"

Therefore, the application was considered complete in January, 1984. On May 21, 1985, after further review had taken place, the application was considered suitable for publication. This is in compliance with the statutory definition of a complete application, § 35–11–103(e)(xxii), W.S.1977 (1986 Cum.Supp.), which states:

"'Complete application' under W.S. 35–11–406(e) means that the application contains all the essential and necessary elements and is acceptable for further review for substance and compliance with the provisions of this chapter."

There was no error committed in the LQD's determination of "completeness" and "suitable for publication."

The record in this case constitutes some seven volumes consisting of thousands of pages of highly technical material. From this record, as well as the hearing held on August 28, 1985, the EQC made some 30 findings of fact, 21 of which were directly related to the written objections filed by appellants. It appears that all of appellants' issues were addressed by the EQC.

Furthermore, our review of the application submitted by AMAX is in conformity with the EQC's decision that such was complete according to law. The application adequately contained information regarding evaluations of wildlife impact, alluvial valley floor restrictions, lateral and subjacent support considerations, the safe handling of any toxic and acidic materials, maintenance of hydrologic balance outside the permit area, and compliance with law on a detailed blasting plan.

Therefore, we are unable to conclude, nor have appellants adequately demonstrated, that the decision of the EQC was arbitrary, capricious, an abuse of discretion, or not in accordance with law. We find the decision is adequately supported by substantial evidence. The decision of the EQC is affirmed in all respects.

Affirmed.