Roger D. PFEIL and Linda Jo Pfeil, husband and wife, for themselves and for their minor children; and Joseph M. Gilsdorf and Karla J. Oksanen, Appellants (Petitioners),

v.

AMAX COAL WEST, INC., a subsidiary of Cyprus Amax Coal Company; and Environmental Quality Council of the State of Wyoming, Appellees (Respondents).

No. 95–34.

Supreme Court of Wyoming.

Dec. 19, 1995.

Anthony T. Wendtland of Davis and Cannon, Sheridan, for appellants.

Marilyn S. Kite, P.C. of Holland & Hart, Jackson; and Steven R. Youngbauer of Amax Coal West, Inc., Gillette, for appellee Amax Coal West, Inc.

William U. Hill, Attorney General; Mary B. Guthrie, Deputy Attorney General; Ron Arnold, Sr. Assistant Attorney General; and Kristi T. Sansonetti, Legal Intern, Cheyenne, for appellee Environmental Quality Council.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

We review property owners' (objectors) contentions that the Environmental Quality Council (EQC) and Amax Coal West, Inc. (Amax) failed to provide them with sufficient and timely notice of a proposal to revise the mining plan for the Eagle Butte Mine. The

mine is located near the Rawhide Village subdivision, nine miles north of Gillette, Wyoming. The objectors also contend the EQC's decision to approve the revision to the mining plan was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, as well as not supported by substantial evidence.

The order is affirmed.

## ISSUES

The objectors, Roger D. and Linda Jo Pfeil, Joseph M. Gilsdorf, and Karla J. Oksanen, supply this statement of the issues:

1. Were Gilsdorf and Oksanen denied proper statutory notice of their right to object to Amax's Form 11 Revision application?

2. Did the public notice provided by the EQC and Amax to [objectors] deprive them of full and fair notice of the proceedings as required by statute, DEQ (Department of Environmental Quality) rules and Wyo. Const. Art. 1, § 6?

3. Is the mandatory twenty (20) day time limit set forth in W.S. § 35–11–406(k) unconstitutional under Wyo. Const. Art. 1, § 6 as applied to citizen objectors?

4. Did the EQC commit reversible error when it denied the Pfeils' motion for a continuance?

5. Was the EQC's decision making process arbitrary and capricious?

The EQC states these issues:

I. Whether [objectors] received adequate notice of the AMAX permit revision.

II. Whether holding a hearing within twenty days after the objection period closed violated [objectors'] procedural due process [rights].

III. Whether the [EQC's] denial of [the Pfeils'] motion for continuance was proper.

IV. Whether the [EQC's] decision that the permit revision be approved should be affirmed.

Amax summarizes the issues, thus:

A. Did the method Amax used to mail notice of the permit revision comply with applicable law?

B. Did the content of the notice of the permit revision comply with applicable law?

C. Did the [EQC's] decision to deny ... Pfeils' motion for a continuance constitute an abuse of discretion?

D. Is the statutory procedure for permit revisions constitutional?

E. Was the [EQC's] decision to grant the permit revision supported by substantial evidence?

## FACTS

In 1976, Amax was issued a mining permit for operating the Eagle Butte Mine north of Gillette, Wyoming. Shortly afterwards, Rawhide Village subdivision was developed immediately to the west of the mine area. The Pfeils moved into Rawhide Village in 1978 and have since acquired other lots in the subdivision. Gilsdorf and Oksanen (Oksanen) purchased their home in Rawhide Village in 1988, and purchased other lots in the subdivision in 1990 and 1994.

Amax planned to begin mining adjacent to Rawhide Village in 1983 but in 1985 revised that date to 1993. Further revisions occurred in 1988 and 1990 causing the·1993 date to change to the year 2007. In 1993, Amax applied for another permit revision. The only change in the mine plan proposed by this revision was to alter the sequence and timing of the mining operations, essentially returning to the earlier schedule by which mining would occur near Rawhide Village in 1994.

The Wyoming Department of Environmental Quality's Land Quality Division (LQD) reviewed the application for revision to the mine permit and on May 13, 1994, authorized Amax to publish notice of its intent to seek permit revision. The LQD drafted a notice to comply with Wyo.Stat. § 35–11–406(j) (1994) which Amax placed in the Gillette newspaper on May 20, May 26, June 1, and June 6, 1994. On May 23, 1994, Amax mailed copies of the notice to surface owners of record of all lands within the permit area, immediately adjacent to the permit area, and within one-half mile of the proposed mining site.

Amax identified these owners through the services of Campbell County Abstract Company which searched county real estate records for names and addresses. The Pfeils received their mailed notice; however, Oksanen did not receive the mailed notice. Instead, during the last week of June, she learned of the proposed revision through neighbors. After contacting Amax, notice was mailed to her which she received on July 5, 1994. The objectors filed timely protests to the permit revision and the EQC scheduled a hearing on those protests on July 26, 1994. On July 20, the Pfeils moved for a continuance. Ruling was reserved and the hearing held on July 26. The motion for a continuance was denied although the hearing examiner ruled the parties could submit additional arguments and information through September 2, 1994.

The objectors' protests were further considered by the EQC at public meetings held on October 5 and 24, 1994. On November 7, 1994, the EQC issued its Findings of Fact, Conclusions of Law and Order granting Amax's request to revise the permit. Objectors filed a petition for review with the district court. That court certified the petition to this Court under WYO.R.APP.P. 12.09.

## DISCUSSION

*Standard of Review*

An administrative agency's decision certified under WYO.R.APP.P. 12.09 is reviewed by this Court under appellate standards applicable to a reviewing court of the first instance. *In the Matter of Nyquist,* 870 P.2d 360, 362 (Wyo.1994). The scope of review of administrative actions is defined in WYO.STAT. § 16–3–114(c) (1990). *Olheiser v. State ex rel. Workers' Comp. Div.,* 886 P.2d 269, 271 (Wyo.1994).

*Adequate Notice*

■ Oksanen contends Amax violated statutory notice requirements when it did not mail notice to her current mailing address available from official property records. The

objectors also contend the content of the notice did not comply with the statute's requirements. Whether Amax complied with statutory notice requirements is a question of law. *See Grams v. Environmental Quality Council,* 730 P.2d 784, 787 (Wyo.1986). The standard of review for an agency's conclusions of law is straightforward; if the conclusion is in accordance with the law, it is affirmed, and if it is not, it is corrected. *Powder River Basin Resource Council v. Wyoming Environmental Quality Council,* 869 P.2d 435, 437 (Wyo.1994).

WYO.STAT. § 35–11–406(j) requires the applicant to both publish and mail notice of its application for permit revision:

> (j) The applicant shall cause notice of the application to be published in a newspaper of general circulation in the locality of the proposed mining site once a week for four (4) consecutive weeks commencing within fifteen (15) days after being notified by the administrator. The notice shall contain information regarding the identity of the applicant, the location of the proposed operation, the proposed dates of commencement and completion of the operation, the proposed future use of the affected land, the location at which information about the application may be obtained, and the location and final date for filing objections to the application. The applicant shall mail a copy of the notice within five (5) days after first publication to all surface owners of record of the land within the permit area, to surface owners of record of immediately adjacent lands, to any surface owners within one-half (½) mile of the proposed mining site.... Proof of notice and mailing shall be attached to and become part of the application.

WYO.STAT. § 35–11–406(j) (1994).[1]

County property records held a warranty deed to Oksanen listing the address to which Amax first mailed notice. The county records also held several quitclaim deeds to Oksanen listing her current mailing address. Oksanen contends that since she received notice only one day before the deadline to file

---

1. The requirement of section (j) at issue in this case, namely mailed notice to surface owners, was changed in 1995 to require notice only be

mailed to surface owners for "initial applications or additions of new lands." WYO.STAT. § 35–11–406(j) (Supp.1995).

objections, the approval of the mine permit revision must be reversed because the decision was without observance of procedure as required by WYO.STAT. § 16–3–114(c)(ii)(D). Amax charges this issue is improperly raised on appeal for the first time. Alternatively, Amax insists it employed procedures reasonably calculated to achieve notice and, although not successful, their efforts satisfied the statutory notice requirements. The EQC determined that mailing notice to the address of legal record satisfied the legal requirements of mailing notice to Oksanen.

This Court has previously considered similar contentions about compliance with statutory notice requirements. *Grams; State ex rel. State Hwy Comm'n v. Stringer,* 77 Wyo. 198, 310 P.2d 730 (1957); *Cottman v. Lochner,* 40 Wyo. 378, 278 P. 71 (1929). Our decision in *Grams* held that an error must be prejudicial and affect the substantial rights of the appellant to warrant reversal. *Grams,* 730 P.2d at 787. Although Amax failed to mail notice to Oksanen's current address, she was not deprived of notice of the proposed revision. She had actual notice, timely filed an objection, and did not make a request for a continuance. The record indicates that after the EQC was advised through post-hearing briefs and affidavits that notice had been mailed to the wrong address, the EQC considered whether there had been compliance with the statutory notice requirements. Oksanen did not claim to the EQC that she was prejudiced. The record indicates Oksanen participated in the proceedings and stated concerns about hydrology and blasting, which were considered by the EQC. We conclude prejudice has not been demonstrated.

We also conclude objectors have not demonstrated prejudice with their claim that the content of the notice did not comply with the statute or agency rules and regulations. Objectors maintain that under the statute they should have been notified when the proposed revision would begin and end and what future use of the affected land was proposed. Additionally, they assert the notice did not contain an index indicating the portion of the permit to be revised and an explanation for a proposed change as required by agency rules. The objectors claim that the failure to include this information in the notice prejudiced them since they could not understand what Amax was proposing and did not have sufficient information to research the issue.

Under these statutes providing for notice and a hearing to consider citizen-objections, any errors must be prejudicial before an agency decision will be reversed. *Grams,* 730 P.2d at 787; WYO.STAT. § 35–11–406(j), (k) (1994). As the objectors note, the purpose of the notice was to provide them with an understanding of the issues. The record indicates Mr. Pfeil reviewed the application at the address listed in the notice. At the hearings, the objectors did not voice complaints concerning the absence of any of this information from the notice. All fully voiced their concerns about an alteration in the direction and sequence of the mining plan. The objectors' actions indicate they recognized and understood they were protesting against any alteration in the direction and sequence of the mine plan progression. From objectors' actions, we can conclude that notice served to inform adjoining property owners that a significant revision to a mining permit was under consideration and they were not prejudiced by the omission of the information.

## Due Process

Objectors claim that a failure to strictly comply with statutory and agency notice requirements violates the Wyoming Constitution's due process requirements of Art. 1, § 6 since Oksanen had inadequate preparation time and the Pfeils had inadequate time for experts to review complex hydrology, blasting, and air quality reports. In response, Amax and the EQC claim time was adequate and point out that, unlike *Grams* which involved a complicated permit revision based on a state regulatory program, this revision changed only mining sequence and timing and was not complex. The record indicates Oksanen did not request a continuance and Pfeils have not provided evidence supporting their contention they intended to hire experts to review reports.

WYO. CONST. ART. 1, § 6 states:

No person shall be deprived of life, liberty or property without due process of law.

■ Procedural due process principles require reasonable notice and a meaningful opportunity to be heard before government action may substantially affect a significant property interest. *Amoco Production Co. v. State Bd. of Equalization,* 882 P.2d 866, 872 (Wyo.1994). Due process considerations are invoked in administrative proceedings. *Id.* A party claiming infringement has the burden of demonstrating that infringement by first showing the existence of a protected property interest and then showing the interest has been affected in an impermissible way. *Meyer v. Norman,* 780 P.2d 283, 289 (Wyo.1989). As appellees claim, objectors do not articulate the specific nature of the property interest at stake. Their arguments, however, do suggest they perceive either that the statutory procedure itself gives rise to an independent property interest protected by the state constitution or that they anticipated enjoyment of their property for at least another fourteen years without adjacent mining. Objectors have not provided authority and argument that these interests rise to the level of a constitutionally protected property interest. Because a mere allegation of constitutional violation does not suffice to justify inquiry, objectors' due process claim is not further considered. *Id.*

*Constitutionality*

■ Objectors challenge the constitutionality of the statute affording a hearing within twenty days after the objection deadline. Statutes are presumed to be constitutional. Challengers bear the burden of proving that a statute is unconstitutional. *Meyer v. Kendig,* 641 P.2d 1235, 1238–39 (Wyo.1982).

WYO.STAT. § 35–11–406(k) (1994) provides:

(k) Any interested person has the right to file written objections to the application with the administrator within thirty (30) days after the last publication of the above notice. For surface coal mining operations, the director may hold an informal conference if requested and take action on the application in accordance with the department's rules of practice and procedure, with the right of appeal to the council which shall be heard and tried de novo. A conference shall be held if the director determines that the nature of the complaint or the position of the complainants indicates that an attempt to informally resolve the disputes is preferable to a contested case proceeding. An informal conference or a public hearing shall be held within twenty (20) days after the final date for filing objections unless a different period is stipulated to by the parties. The council or director shall publish notice of the time, date and location of the hearing or conference in a newspaper of general circulation in the locality of the proposed operation once a week for two (2) consecutive weeks immediately prior to the hearing or conference. The hearing shall be conducted as a contested case in accordance with the Wyoming Administrative Procedure Act, and right of judicial review shall be afforded as provided in that act.

■ The objectors claim they were denied due process under WYO. CONST. ART. 1, § 6 because the short notice period did not afford them a meaningful opportunity to meet Amax's claims. Objectors correctly state that compliance with statutory requirements of notice and hearing does not always satisfy constitutional requirements of due process. Objectors' due process claim again fails, however, for the same reason that there is no showing that a protected property interest has been affected in an impermissible way.

*Motion For Continuance*

The objectors claim the EQC abused its discretion when it failed to grant their motion for a continuance. Relying on *Grams,* the EQC ruled that WYO.STAT. § 35–11–406(k) denies the EQC the discretion to grant a continuance beyond the prescribed twenty-day limit unless there is a stipulation to the continuance among the parties. The parties did not stipulate to a continuance. *Grams* found it was not an abuse of discretion for the EQC to comply with the time specified in § 35–11–406(k). *Grams,* 730 P.2d at 788.

■ Objectors claim more time would have permitted them to refute the evidence

supporting the EQC's conclusion that any change in mining sequence and direction would not adversely affect the hydrologic balance under the Rawhide Village Subdivision. The EQC found that the hearing examiner had denied the continuance before evidence was presented and reconsidered the motion at the conclusion of the hearing. Finding that only the Pfeils had requested a continuance, the hearing examiner determined they had an obligation to pursue their protest in a diligent and timely manner. The hearing examiner found that despite having two months actual notice, the Pfeils had delayed in contacting an attorney. The EQC affirmed the hearing examiner's denial. In *Grams,* we observed that an abuse of discretion will not result when the complaining party's failure to conduct discovery was due to its own delay. We, therefore, find no abuse of discretion. *Grams,* 730 P.2d at 788.

*Substantial Evidence*

Objectors contend the EQC's conclusion that the hydrologic balance would not be harmed was not supported by substantial evidence.

Under WYO.STAT. § 16-3-114(c) (1990), an appeal of an administrative agency's decision requires that we review the entire record to determine if the agency's actions are supported by substantial evidence. If the agency's actions are supported by substantial evidence, this Court will not substitute its judgment for that of the agency. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Holly Sugar Corp. v. State Bd. of Equalization,* 839 P.2d 959, 963 (Wyo.1992). The burden of proving a lack of substantial evidence rests upon the party attacking the agency's decision. *Montana Dakota Utilities v. PSC,* 847 P.2d 978, 983 (Wyo.1993).

The objectors contend the EQC relied upon groundwater modeling which had not been properly updated. Objectors claim that under cross-examination an expert witness conceded he was speculating when he gave an opinion that no new modeling was needed. They believe that without this factual basis the EQC's finding and conclusion that the hydrologic balance would not be adversely affected was not supported by substantial evidence. The record shows that in response to the question whether the expert was in fact speculating that modeling the revision was unnecessary, the expert witness stated, "I was using my judgment" and "you can call it a guess, I guess." The record later shows, however, that the expert explained reasons for his determination that modeling the revision was unnecessary, thus providing a factual basis.

The EQC made the following findings of fact concerning hydrologic impacts:

14. At the hearing, the Protestants raised concerns about possible impacts of mining on water levels or the hydrologic balance beneath their property. Evidence at the hearing showed that the Protestants have no water rights to be protected by the law, but the Council considered this issue to the extent the law also protects public water supplies.

15. The evidence showed that a change in the mining sequence did not change the hydrologic impacts, and that a series of geologic and hydrologic barriers isolate Rawhide Village from the mining operation, making it unlikely that mining will have any adverse impact on Rawhide Village water supplies. Furthermore, actual monitoring of water levels indicates that, even though a pit close to Rawhide Village is presently being dewatered, no declines in water levels have ever been detected in wells in or near Rawhide Village. Evidence also showed that the Rawhide Village water supply well is completed at over a thousand feet deep, much deeper than the mining operation will ever reach. Based on this evidence, the Council finds and concludes that a change in the mining sequence of Amax's mining operations is unlikely to have any hydrologic impacts on Rawhide Village or its water supplies.

16. Even if Amax's mining operations should have an impact on Rawhide Village's water supply wells, Wyo.Stat. § 35-11-415(b)(xii) requires the mine operator to:

replace ... the water supply ... where the supply has been affected by contamination, diminution or interruption proximately resulting from the surface coal mine operation....

Evidence at the hearing showed that Amax has a history of meeting this commitment as required by law.

17. For these reasons, the Council finds and concludes that the evidence does not support concerns over the revision in mining sequence causing hydrologic impacts, and that Amax adequately demonstrated compliance with all applicable legal requirements relating to hydrologic impacts.

These findings and conclusions reveal the EQC based its decision upon several factors and that these findings and conclusions were appropriately based upon evidence in the record.

*The EQC'S Decision–Making Process*

■ Finally, objectors claim that the EQC's decision-making process concerning whether or not Amax had properly provided notice was arbitrary and capricious in violation of WYO.STAT. § 16–3–114(c). Specifically, objectors assert that after one member of the board voted against the permit revision because of improper notice during one meeting, that member suddenly reversed his decision during a later meeting without reason and arbitrarily and capriciously. The record indicates that the board discussed the notice issue at length. The mere fact that a vote changed does not constitute an arbitrary and capricious act.

Affirmed.